## F. HATTERSLEY BROKERAGE & COMMISSION COMPANY, Respondent, v. MAMIE W. HUMES, Executrix, Appellant.

### St. Louis Court of Appeals, January 4, 1916.

1. **ESTOPPEL: Sales in Individual or Corporate Capacity.** The seller of goods did not, by charging the sale upon his books to the H. Company and receiving checks from the H. Company as payments on account, estop himself from pursuing individually the person who negotiated the sale, where the seller had previously sold goods to the individual under the trade name of H. Company and intended to make the sale in question in the

same manner, not knowing that, subsequent to the prior tranactions, the individual had organized a corporation under the name of the H. Company.

2. **APPELLATE PRACTICE: Conclusiveness of Verdict.** A verdict supported by substantial evidence is conclusive, on appeal.

3. **WITNESSES: Death of Party to Transaction: Competency of Disinterested Bystander.** A stenographer of a surviving party to a transaction, who did not participate in the transaction, was not incompetent, under Sec. 6354, R. S. 1909, to testify to statements made by the deceased party while the negotiations were being carried on.

4. **EVIDENCE: Res Gestae: Correspondence with Third Person.** In an action against an estate, for the purchase price of goods sold to decedent, defended on the theory that the goods were not sold to decedent but to a corporation in which he was interested, correspondence between plaintiff and a third person, relating to the goods sold, and speaking of the sale as having been made to decedent, was admissible as of the *res gestae*, for the purpose of showing to whom plaintiff extended credit, in view of the fact that the correspondence was submitted to decedent and that he made suggestions as to the answers to be made, thus making himself a party to the correspondence.

5. **WITNESSES: Death of Party to Transaction: Competency of Survivor: Waiver of Disability.** In an action against an estate, for the purchase price of goods sold to decedent, defended on the theory that the goods were not sold to decedent but to a corporation in which he was interested, defendant, by calling plaintiff as a witness to identify a statement rendered by him against the estate, in which decedent was described as transacting business under the name of H. Company (the name of the corporation), waived his right to object to the competency of plaintiff, under Sec. 6354, R. S. 1909, as a witness for any purpose, for the reason that plaintiff was examined by defendant concerning a matter touching the merits of the controversy, which operated as a waiver of his incompetency under the statute.

6. ——: ——: ——: ——. The competency of a party to testify, under Sec. 6354, R. S. 1909, is waived by the adverse party calling such party as a witness and examining him concerning the merits of the controversy.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

Affirmed.

*Matt G. Reynolds, Thos. B. Harlan* and *Lydia Lee* for appellant.

(1) The corporate existence of the Humes Flour Company is established under the statutes 'of this State, by the showing that the articles of association were filed in the office of the Secretary of State and the certificate of incorporation issued by that officer; and this being true, its corporate character cannot be thereafter attacked collaterally or by any one except the state itself. Sec. 2975, R. S. 1909; Boatmen's Bank v. Gillispie, 209 Mo. 217; First National Bank v. Rockefeller, 195 Mo. 15; Furniture Co. v. Crawford, 127 Mo. 356; Merchants Bank v. Harrison, 39 Mo. 433; City v. Shields, 62 Mo. 247; Granby Mining Co. v. Richards, 95 Mo. 106. (2) The deceased, Humes, transacted all business disclosed by the record with the Hattersley Brokerage and Commission Company, in the name of the Humes Flour Company, and it is familiar law that the contract of an agent is the contract of the principal, provided the former acts in the name of the principal and in such case the principal and not the agent is bound by the contract, unless the agent has especially agreed to become liable, or has obligated himself by fraudulent acts. Furniture Co. v. Crawford, 127 Mo. 356; Hartzell v. Crumb, 90 Mo. 629; Hearne v. Railroad, 53 Mo. 324; City of Carterville v. Gibson, 168 S. W. 673; Myers v. Kilgen, 177 Mo. App. 724; Bank v. Hutton, 224 Mo. 71; Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050; Great Lakes Coal & Dock Co. v. Seither Transit Co., 220 Fed. 28; Post v. Pearson, 108 U. S. 418; Halls Safe Company v. Herring-Hall-Marvin Safe Co., 146 Fed. 37. (3) (a) However, having dealt with the Humes Flour Company as a corporation, in its corporate name, respondent is now estopped to deny its corporate character, and cannot be heard to say that it did not know the Humes Flour Company was a corpora-

tion. Studebaker Bros. Mfg. Co. v. Montgomery, 74 Mo. 101; City v. Shields, 62 Mo. 247; St. Louis Gas Light Company v. City, 84 Mo. 202, s. c. 11 Mo. App. 55; 10 Cyc. 662; Whitney v. Wyman, 101 U. S. 392, 25 Law Ed. 1050; West Missouri Land Company v. Railroad, 161 Mo. 595; Broadwell v. Merritt, 87 Mo. 95; Stoutimore v. Clark, 70 Mo. 471; Railroad v. McPherson, 35 Mo. 13; Insurance Company v. Needles, 52 Mo. 17; Insurance Company v. Bowman, 60 Mo. 252; Ingle System Company v. Norris & Hall, 178 S. W. 1113; Beekman v. Railroad, 35 Fed. 12; Cory v. Lee, 93 Ala. 468. (b) And this is so, even if the corporation had not been regularly organized, provided it was a *de facto* corporation doing business as such, in good faith. Ellerbe v. National Exchange Bank, 109 Mo. 445; Hasbrouck v. Rich, 113 Mo. App. 389; Elliott v. Sullivan, 156 Mo. App. 496; American Salt Co. v. Heidenheimer, 80 Tex. 344; Gartside Coal Company v. Maxwell, 20 Fed. 197; Western Bank v. Trust Company, 163 Fed. 713; Railroad v. Continental Trust Co., 95 Fed. 497; Smith v. Sheeley, 12 Wall. 358; Andes v. Ely, 158 U. S. 312; Commissioners v. Bolles, 94 U. S. 104; Close v. Greenwood Cemetery, 107 U. S. 466; Cory v. Lee, 93 Ala. 468; Sniders Sons Co. v. Troy, 91 Ala. 224; Planters & Miners Bank v. Padgett, 69 Ga. 159; Merchants and Manufacturers Bank v. Stone, 38 Mich. 779; Stout v. Zulick, 48 N. J. L. 599. (c) Likewise, is it true even after the corporation has ceased active business or all of its stock is in the hands of one person. Oxley Stave Co. v. Butler Co., 121 Mo. 614; Youree v. Insurance Company, 180 Mo. 153; Bank v. Robidoux, 57 Mo. 446; Kansas City Hotel Co. v. Sauer, 65 Mo. 279; Manufacturing Company v. Montgomery, 144 Mo. App. 494. (4) Frederick W. Humes, who, it is admitted, negotiated the contract in suit, in behalf of the Humes Flour Company, being dead, it was error to permit the officers and agents of

the Hattersley Brokerage & Commission Company negotiating on its behalf to testify with reference thereto. Sec. 6354, R. S. 1909; Carroll v. United Rys., Co., 157 Mo. App. 247; Treats v. Flabders, 118 Mo. 660; Ring v. Jamison, 66 Mo. 424; Wood v. Matthews, 73 Mo. 477; Weiermueller v. Scullin, 203 Mo. 466; Lieber v. Leiber, 238 Mo. 1; Meier v. Thieman, 90 Mo. 433; Bishop v. Investment Company, 229 Mo. 699; McClure v. Clement, 161 Mo. App. 23; Taylor v. George, 176 Mo. App. 215; Griffin v. Nicholas, 224 Mo. 275; Banking House v. Rood, 132 Mo. 256; Williams v. Edwards, 94 Mo. 447; Columbia Brewing Company v. Rohling, 133 Mo. App. 65; Diggs v. Henson, 181 Mo. App. 34; Schuler v. Metropolitan Life Ins. Co., 176 S. W. 274; Goodale v. Evans, 263 Mo. 219. (5) The fact that Mr. Hattersley was called as a witness in the probate court did not make him a competent witness for all purposes thereafter, it appearing that he did not testify generally, that he was only asked to identify the account sued on, and it is not clear that he answered that question. Harris v. Railroad, 115 Mo. App. 527; Reding v. Reding, 143 Mo. App. 660; Garrus v. Davis, 234 Ill. 326; Merchants Loan & Trust Company v. Egan, 222 Ill. 494; Stevens v. Moulton, 68 N. H. 254.

*W. B. & Ford W. Thompson* for respondent.

(1) The test question universally applied in cases of this character is "to whom was the credit given." Wittenberg v. Fisher, 183 Mo. App. 347. Respondent did not know that there was a corporation by the name "Humes Flour Company," and did not extend credit to such corporation. (2) The stenographer of respondent, and also the bookkeeper of respondent, were both competent witesses, though Humes be dead. Carroll v. United Railways Co., 157 Mo. App. 247. (3) Appellant, by calling Mr. Hat-

tersley, the president of respondent company, as a witness in the probate court, waived his incompetency when the case was tried on appeal, and more especially since his attorney's attention was expressly called to the effect of so calling him as a witness, and the warning given in the probate court at the time. Hickman v. Greene, 123 Mo. 165; Tomlinson v. Ellison, 104 Mo. 105; Bensberg v. Harris, 46 Mo. App. 404.

NORTONI, J.—This is a suit on an account for flour sold and delivered. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is a corporation engaged in the brokerage business and defendant is executrix of the estate of her late husband, F. W. Humes. Defendant's husband was president of the Humes Flour Company, a corporation, for several years before the date of his death, and purchased the flour from plaintiff. Plaintiff insists that it did not know the Humes Flour Company was incorporated and dealt with Humes wholly on his personal credit, while defendant insists the estate of her deceased husband is in no wise responsible for the indebtedness, because it was contracted by the Humes Flour Company, a corporation. The case was tried before the court without a jury and no instructions were asked or given on either side.

It is argued that the judgment against the estate of F. W. Humes may not be sustained, in that plaintiff is estopped to assert a claim against the estate, for the reason it sold and delivered the flour to the Humes Flour Company, a corporation. This argument proceeds from the fact that plaintiff charged the flour at the several dates of its sale on its books to the Humes Flour Company, rendered its invoices to the Humes Flour Company, and received a number of checks of the Humes Flour Company, which appear to be credited as payments on the account. If this were all the evidence, the argument would be more

persuasive, but other facts and circumstances in the case are to be looked to.

It appears that F. W. Humes purchased flour frequently from plaintiff during the years 1907 and 1908, under the trade name of F. W. Humes & Company. At that time Humes was conducting his business as an individual, under the trade name above mentioned. He suspended trading, however, with plaintiff for some two or three years, and, in the meantime, incorporated the Humes Flour Company, of which plaintiff says it had no knowledge. Thereafter Mr. Humes commenced trading again with plaintiff, and, at the time of opening the account in suit here, he instructed plaintiff to render invoices for the flour to Humes Flour Company, saying: "I am the Humes Flour Company." Plaintiff proceeded to deliver flour on different occasions and charge it as above stated. The invoices were also rendered to Humes Flour Company. However, plaintiff insists that it did not know Humes Flour Company was an incorporated concern but regarded it merely a trade name employed by Mr. Humes.

There is an abundance of evidence in the record tending to prove plaintiff extended credit to F. W. Humes personally in the sale of the flour, and there is evidence, too, tending to show that the business was all transacted with, and in the name of, the corporation, Humes Flour Company. Obviously plaintiff is not, in such circumstances, to be regarded as estopped from asserting its claim against the estate of Humes, if the credit was given in the first instance to Mr. Humes individually. The real question in such circumstances is rather one of fact as to whom the credit was given. [See Wittenberg v. Fisher, 183 Mo. App. 347, 166 S. W. 1106; Stokes v. Mills, 171 Mo. App. 638, 154 S. W. 455; Steele v. Ancient Order, etc., 125 Mo. App. 680, 103 S. W. 108; Rottmann v. Pohlmann, 28

Mo. App. 399.] The court found the issue for plaintiff as if the flour were sold by it to Mr. Humes individually and on his credit, and there is substantial evidence tending to show such was indeed the fact, and the matter is therefore concluded here.

Plaintiff's stenographer, Miss Spilker, testified, over defendant's objection and exception, that, at the time Mr. Humes commenced doing business with plaintiff—that is, purchasing the flour on the account in suit—he said in her presence to plaintiff's president, Hattersley, that he was doing business under the name of Humes Flour Company; also that, later in the conversation, on an inquiry as to who constituted the Humes Flour Company, he said: "I am the Humes Flour Company." It is argued the court erred in permitting the witness to give this testimony, for that she was incompetent, under the statute, because Mr. Humes, the other party, is dead; but we are not so persuaded. In the case of the death of one party to the contract, the statute forbids the other party thereto from testifying concerning it, but obviously this does not forbid a mere bystander from giving testimony as to what was said between the parties to the contract. [See Snider v. McAtee, —— Mo. ——, 178 S. W. 484; s. c. 165 Mo. App. 260, 147 S. W. 136.] In order to effectuate the spirit of the statute and attain a just result through applying its principle so that the parties may stand on an equal footing, the courts have declared, when the contract is made by an agent for a corporation, that such agent may not give evidence concerning it, if the other party thereto is dead; but the inhibition in such circumstances goes to the agent who negotiated the contract, and not to all of the employees of the corporation who may have some knowledge, apart from the contract itself, relating to the incidents of a trade relation. [See Carroll v. United Rys. Co., 157 Mo. App. 247, 137 S. W. 303.] See, also,

though not directly in point, for an exposition of the principle touching the agent, Leavea v. Southern R. Co., 171 Mo. App. 24, 153 S. W. 500, s. c. —— Mo. ——, —— S. W. ——. Miss Spilker, plaintiff's stenographer, was in no wise agent for defendant in negotiating the contract of sales under which Mr. Humes purchased the flour and she was, therefore, competent to speak concerning the matters given in evidence by her.

Plaintiff introduced in evidence several letters and telegrams which passed between it and a milling company in Minnesota, concerning flour sold by plaintiff to Mr. Humes. This correspondence was introduced in evidence apparently as tending to show that plaintiff dealt with Humes as an individual and not the Humes Flour Company. Every reference to the transaction in this correspondence is to Mr. Humes and not to the Humes Flour Company. This correspondence was objected to as incompetent under the rule against hearsay. Manifestly the correspondence between plaintiff corporation and the company from whom it purchased flour, standing alone, was not competent evidence here, for that it impinged the rule against hearsay and savored of a self-serving declaration. But when considered in connection with the testimony of plaintiff's president, Mr. Hattersley, it is not to be so regarded. This correspondence related to different carloads of flour sold by plaintiff to Humes and ordered to be shipped from the mill in Minnesota. The shipments were delayed, and at other times some controversy arose about the price, but touching all of this Mr. Humes was fully advised at the time, for he read and considered all of the correspondence together. It is said he called at plaintiff's office on different occasions and inquired concerning the subject-matter to which the letters and telegrams in evidence relate, and all of the correspondence was

submitted to him. He read the letters and the tele-
grams, made suggestions to plaintiff as to what the
reply should be concerning the delay in shipment and
the prices, etc. In such circumstances, it would seem
that Mr. Humes should be treated as a party to the
correspondence, relating as it did to the purchase of
the several cars of flour by him from plaintiff, for he
read it, digested it, commented upon it, made sugges-
tions as to what answers should be made to some of
the letters, etc. The correspondence in these circum-
stances is competent as of the *res gestœ*, for Mr.
Humes is to be regarded as a party to it, although it
passed between plaintiff and the milling company in
Minnesota. In this connection, see Glenn v. Lehnen,
54 Mo. 45.

The case originated in the probate court, where
plaintiff filed the verified account sued upon. On the
trial of the issue in the probate court, defendant called
as a witness Mr. Hattersley, the president of the
plaintiff corporation, caused him to be sworn, and ex-
amined him as a witness to identify the account sued
on as an account made up and rendered by his com-
pany after the death of Mr. Humes. This account, so
far as relevant to the question here, is as follows:

"Account
"St. Louis, Mo., May 15, 1913.
"F. W. Humes, transacting business under the name
and style of Humes Flour Company,
"Estate of F. W. Humes to F. Hattersley Brokerage
and Commission Company, Dr."

Then follow the items sued upon. At the time
defendant called Mr. Hattersley as a witness in the
probate court, plaintiff's counsel suggested to him
that Mr. Hattersley was an incompetent witness un-
der the statute, and if defendant saw fit to use him in
the probate court, it would operate as a waiver of such

incompetency, and that plaintiff would introduce him in the trial in any further proceedings thereafter. Notwithstanding this warning, defendant's counsel caused the witness to be sworn and examined him to the extent at least of identifying the account sued upon, as above stated. On the trial in the circuit court, after showing these facts, plaintiff introduced Mr. Hattersley as a witness, and he was permitted to testify touching the transaction involved—that is, the merits of the case throughout, in the view that, though incompetent in the first instance, the matter concerning that had been waived by defendant. Defendant objected and excepted and argues here that the court erred in respect of this matter, but we are not so persuaded. It is to be conceded that Mr. Hattersley was an incompetent witness in the first instance, under the statute, for that he personally, representing plaintiff corporation, contracted the sale of the flour to Humes, since deceased. However, it was competent for defendant executrix to call him as a witness in behalf of the estate, if she chose to do so. Indeed, the statute (section 6356, R. S. 1909) so provides. But by calling as a witness an adverse party thus incompetent and examining him touching the merits of the controversy, one waives the right to object thereafter on the grounds of the incompetency of the witness. In other words, such renders the witness competent to speak thereafter throughout the proceedings. The cases all declare the rule to this extent. So it is that, where a party to a suit is disqualified by the statute because of the death of the other party to testify, the taking of his deposition by the adverse party constitutes a waiver as to such incompetency. [See Tomlinson v. Ellison, 104 Mo. 105, 16 S. W. 201; see also, Stone v. Hunt, 114 Mo. 66, 21 S. W. 454; Ess v. Griffith, 139 Mo. 322, 40 S. W. 930; In re Soulard's Estate, 141 Mo. 642, 43 S. W. 617.] The rule is the same if the

adverse party sees fit to take the deposition of the incompetent witness and file it in the cause, even though such deposition is not read in evidence at the trial. [See Borgess Inv. Co. v. Vette, 142 Mo. 560, 44 S. W. 754.]  So, also, is the matter of the incompetency waived in such circumstances through the taking of the deposition of a witness who would otherwise be excluded from speaking in the case perforce of the statute, even though such deposition so taken is not filed in the case at all.  [See Rice v. Waddill, 168 Mo. 99, 101, 67 S. W. 605.]

But it is argued that, though defendant · caused Mr. Hattersley to be sworn and placed him on the stand as a witness for the ·estate in the probate court, she did not waive her right to object to his competency to testify concerning the merits of the case, because her counsel did no more than present the account sued upon to him and ask him to identify it as the account made out in his office since the death of Mr. Humes, which he admitted to be the fact.  It is said this in no wise went to the merits of the case, but we are not so persuaded, when the real issue between the parties is considered.  It is not denied that plaintiff sold the flour to either Mr. Humes or the Humes Flour Company.  The sole defense throughout the case is, that the debt sued for is the debt of the Humes Flour Company, a corporation, and not of Mr. F. W. Humes individually, so as to be enforceable against his estate. This is the matter about which the controversy arises. The account sued upon was prepared in plaintiff's office, and its description of the debtor is as follows: "F. W. Humes, transacting business under the name and style of Humes Flour Company."  It is apparent that Mr. Hattersley was examined by defendant's counsel in the probate court to elicit from him an admission under oath at the trial that he had rendered the account since the death of Mr. Humes, showing the

business was transacted under the name and style of Humes Flour Company. Manifestly such related to the very crux of the case, and when the examination of Mr. Hattersley, even to this extent, is considered in connection with the account sued upon and the issue on trial, it is apparent this testimony went to the merits of the controversy. This being true, no one can doubt that Mr. Hattersley was then authorized to give in evidence the facts touching the matter, tending to show why the account appeared to relate to transactions had with Mr. Humes in the name and style of Humes Flour Company. Indeed, in the situation, an apparent undue advantage would accrue to defendant if the further evidence of Mr. Hattersley were excluded, for the admission by him, under oath, that the account was made out with relation to transactions had under the name and style of Humes Flour Company are to be viewed as against the interests of the plaintiff. In this connection see 40 Cyc. 2346; also Hoehn v. Struttman, 71 Mo. App. 399. It is the design of the statute and the purpose of the courts in interpreting it to place the parties on an equal footing at the bar of public justice.

The judgment should be affirmed. It is so ordered. *Reynolds P. J.,* and *Allen, J.,* concur.