[L. A. No. 11038. In Bank.—March 28, 1931.]

DANIEL A. DEACON, Respondent, v. E. F. BRYANS, as Executor, etc., Appellant.

Arthur F. H. Wright and Eugene Daney for Appellant.

Wright & McKee and C. M. Monroe for Respondent.

CURTIS, J.—This action was brought to recover from the estate of Helene D. Henrich, deceased, on four promissory notes, which it is alleged were executed and delivered to plaintiff by deceased during her lifetime, and which according to the complaint were lost or stolen from the plaintiff prior to the commencement of this action. The aggregate amount of the notes was $13,966. The first trial of the case resulted in a judgment in favor of the plaintiff, on one of said notes, the amount thereof being $3,000, and in favor of the defendant as to the balance of said notes. Each side appealed from said judgment and the District Court of Appeal sustained each appeal and reversed said judgment *in toto*. (*Deacon* v. *Bryans*, 88 Cal. App. 322 [263 Pac. 371].) That part of the judgment in favor of the plaintiff was reversed on the ground that the evidence was insufficient to support the finding of the trial court as to the execution and delivery of said $3,000 note, and the court reversed that part of the judgment in favor of the defendant on the ground that the trial court committed reversible error in sustaining objections to questions asked plaintiff covering facts occurring prior to the death of the defendant's testatrix. The ruling of the appellate court in this respect was to the effect that the defendant by cross-examining the plaintiff as to certain facts occurring during the lifetime of said testatrix had waived the disqualification, provided for by section 1880 of the Code of Civil Procedure, of a party to an action against an executor or administrator upon a claim prosecuted against an estate testifying as a witness in said action.

After this decision a second trial of said action was had in which the defendant refrained from cross-examining the plaintiff on any of the matters or facts occurring prior to the death of said testatrix. Thereupon the plaintiff introduced in evidence the cross-examination of the plaintiff taken at the previous trial in which the defendant had interrogated the plaintiff on certain facts occurring during the lifetime of the deceased, and thereafter, and over the objection of the defendant, the attorney of the plaintiff proceeded to examine the plaintiff regarding the execution

and delivery of said promissory notes by the decedent during her lifetime, and as to other matters and facts occurring prior to the death of said decedent. With this evidence before it, the trial court found in favor of the plaintiff upon all four counts of his complaint setting up said four promissory notes, and gave judgment in favor of the plaintiff for the aggregate amount of said four promissory notes. From this judgment the defendant has appealed.

One of the grounds advanced by the defendant for a reversal of the judgment, and the one to which he has devoted the main portion of his argument, is that he did not by the limited character of the cross-examination to which he subjected the plaintiff on the first trial of said action thereby waive the disqualification of the plaintiff as a witness in said action. The argument of the defendant in this respect is in effect as well as in fact an attempt to show that the decision of the appellate court rendered in the former trial of this action was erroneous and should not be adhered to or followed by this court on the present appeal. ▮ The correctness of the decision of the District Court of Appeal upon the former appeal of this action will not be inquired into on the present appeal. It has become the law of the case, binding upon the parties in all future litigation in this action whether said litigation is carried on before the trial court, or in any of the appellate courts of the state. The authorities sustaining this proposition of law are numerous. We will cite but a few from the recent decisions of this court: *Estate of Baird*, 193 Cal. 225 [223 Pac. 974], *Yuba Investment Co.* v. *Yuba Consolidated Gold Fields*, 199 Cal. 203 [248 Pac. 672], and *United Dredging Co.* v. *Industrial Acc. Com.*, 208 Cal. 705, 712 [284 Pac. 922, 925]. In the latter case, we went fully into the question, and our conclusions are stated in the following language:

"It is generally accepted that the principles of law necessarily involved and decided by appellate courts are binding upon the lower courts in future proceedings in the same case, such as upon a new trial. [Citing authorities.] Upon a later appeal the appellate court will not inquire into the correctness of the principles of law laid down upon the former appeal, but will only consider the record to determine if said principles have been followed. Where a decision upon appeal has been rendered by a District Court

of Appeal and the case is returned upon a reversal, and a second appeal comes to this court directly or intermediately, for reasons of policy and convenience, this court generally will not inquire into the merits of said first decision, but will regard it as the law of the case. If the appellant was dissatisfied with the first decision of the District Court of Appeal he should have applied to this court for a hearing. [Citing authorities.] While there is a modern tendency on the part of the appellate courts throughout the country not to regard this doctrine of the law of the case as one to be adhered to in all cases, but, rather, to make exceptions where the decision is manifestly unjust, the doctrine has by no means been abandoned but is still followed as a general rule of practice and procedure.'' (Citing authorities.)

We know of no instance where this court has failed to adhere to the doctrine of the law of the case. No good reason has been presented by the defendant why we should not do so in the present instance. If defendant was dissatisfied with the opinion of the District Court of Appeal, he could have asked for its review in this court. Failing to do so, it must be assumed that he was, at least at the time of its rendition, satisfied of its correctness, and willing to abide by its conclusion. It is now too late for him to change position and attempt to avoid its consequences.

█ He further contends, however, that as the judgment was reversed he is entitled to a trial *de novo,* and that even if the previous decision of the appellate court establishes the law of the case, it has no bearing upon the facts of the case, nor the procedure whereby the facts may be brought out in the subsequent trial. Defendant states his contention as follows: ''The fact that on a former trial the defendant cross-examined the plaintiff, Deacon, as to the search he made for the alleged notes of decedent, did not open the door for plaintiff on a second and different trial to testify as to the circumstances of the execution of said notes, or as to matters occurring before the death of such decedent.''

On the other hand, the trial court held that as the defendant waived the disqualification of the plaintiff by the cross-examination of him at the first trial, such waiver continued during the entire pendency of the action and rendered the plaintiff a competent witness upon matters or facts occurring during the lifetime of the deceased, not only at the

trial at which said cross-examination was had, but at all future trials of the action. The plaintiff, of course, supports the ruling of the trial court.

There is no question but that the provisions of subdivision 3 of section 1880 of the Code of Civil Procedure may be waived by an executor. (*Kinley* v. *Largent*, 187 Cal. 71 [200 Pac. 937]; *McClenahan* v. *Keyes*, 188 Cal. 574 [206 Pac. 454].) There appear to be no authorities in this state which hold directly that such disqualification, being once waived, is waived in all subsequent proceedings. In *McClenahan* v. *Keyes, supra,* it was held in an action by a physician against the executor of the will of a decedent to recover on a claim against the estate of said deceased person, that although the physician was not a competent witness to testify to matters occurring during the lifetime of the deceased, the executor by taking the deposition of said witness and examining him on matters occurring prior to the death of said decedent had thereby waived the disqualification of the physician under the provisions of subdivision 3 of section 1880 of the Code of Civil Procedure even though the executor declined to use said deposition at the trial of said action. To the same effect are: *Hussey* v. *Loeb,* 60 Cal. App. 469 [213 Pac. 271]; *Borgess Investment Co.* v. *Vette,* 142 Mo. 560 [64 Am. St. Rep. 567, 44 S. W. 754]; *Rice* v. *Waddill,* 168 Mo. 99 [67 S. W. 605]; *In re Estate of Soulard,* 141 Mo. 642 [43 S. W. 617]. In *Ess* v. *Griffith,* 139 Mo. 322 [40 S. W. 930], it was held that " 'A waiver of objection to incompetency made at one stage of the taking of testimony is a waiver during the whole progress of that proceeding' ". In the case of *F. Hattersley Brokerage & Commission Co.* v. *Humes,* 193 Mo. App. 120 [182 S. W. 93], which was an action against an executrix to recover on a claim against an estate in which the president of the plaintiff corporation was called as a witness by the defendant to identify the account sued on while said action was pending in the probate court, where the same originated, it was held that the defendant thereby waived the disqualification of said witness, and that he was competent to testify as to the merits of the case, when it subsequently came on for trial before the Circuit Court.

The only case to which our attention has been called which squarely holds that the waiver of the competency of a wit-

ness during the trial of an action fixes his status as a witness and renders him competent in a subsequent trial of the same action is that of *Comstock's Admr.* v. *Jacobs,* 89 Vt. 133 [Ann. Cas. 1918A, 465, 94 Atl. 497]. This case is in principle so like the one before us that we quote quite at length from it as follows:

"Defendant was a witness in his own behalf, and, against the objection that he was incompetent to testify to the contract as the other party thereto was dead, was permitted to testify that he made a contract with the Comstocks for their life support for which he was to have all their property. Plaintiff had introduced no living witness to such contract, and his rebuttal evidence tended to show that no such contract was ever made. Plaintiff had not called defendant as a witness at this trial. When the case was first here it appeared that the plaintiff, in his opening case, called the defendant as a witness and examined him at length relative to the contracts made by him with the Comstocks under which he received all their property and also as to amount of money and property received by him from plaintiff's intestate in her lifetime. On the facts certified by the judge who presided at the trial, this court then held that the plaintiff, by calling the defendant as a witness and examining him as he did, waived the statutory incompetency and made him competent as a general witness in the case. (*Comstock's Admr.* v. *Jacobs,* 84 Vt. 281 [78 Atl. 1017, Ann. Cas. 1913A, 679].) It is now claimed that when plaintiff called defendant as a witness at the first trial he only inquired of him concerning Mrs. Comstock's bank book, and the judge presiding at the last trial states in the bill of exceptions now before us that it appeared that at a previous trial the defendant had been used as a witness by both parties, but the plaintiff had only used him as a witness concerning the bank book of Eunice Y. Comstock.

"No question is made but that the record when the case first came here showed as stated in that opinion. The decision on the facts then certified up settled the competency of the defendant as a witness in his own behalf and became the law of the case to the extent of fixing his status as a witness in the subsequent trials. (*Cowles* v. *Cowles' Estate,* 81 Vt. 503 [71 Atl. 191].) The waiver of defendant's incompetency as a witness having thus been established, it

could not be impeached at a subsequent trial without falsifying the record of the former trial. That record must stand, as no steps were taken to have it corrected on a rehearing. But the exception could not be sustained if the question was an open one. It is generally held, that when an executor or administrator suing or defending on behalf of a decedent's estate, calls the adverse party and examines him in regard to transactions with the decedent, he thereby waives the statutory incompetency of the witness, and makes him competent as a general witness in the case.''

The defendant has made no real attempt to answer these authorities or to cite others prescribing a contrary rule to that announced in the cases referred to above. We cannot see that the authorities cited by the defendant regarding the limitation of the rule as to waiver of incompetency have any application to the question we have just been discussing, and which is really the only question in the case.

The cases cited by plaintiff and above referred to indicate that the courts which have given consideration to this question strongly incline to the rule that a disqualification having been once waived, remains waived in all subsequent proceedings including those taken at a subsequent trial. The reason for the rule apparently is that a litigant cannot be permitted to speculate as to what his examination of a witness may bring forth. Having made his selection of one of two courses which he may pursue, he has no right, after he discovers that the course selected is not to his advantage, and after he has put the opposite party to the expense, and has consumed the time of the courts in a trial of the case in accordance with the course selected, to change his position and make another and different selection. Such a course would be unfair both to the opposite party and to the court and should not be countenanced in a court of justice.

Our conclusion, therefore, is that the trial court correctly admitted the evidence of the plaintiff as to the execution and delivery by the decedent of the promissory notes sued upon, and as to the facts and circumstances surrounding the execution, delivery and loss of said promissory notes.

Finally, the defendant contends that the testimony of the plaintiff is so inherently improbable and impossible of belief that this court should reject the same as a whole, and reverse the judgment on the ground that there is no evidence

to support the findings of the trial court. While the testimony of the plaintiff presents a somewhat unusual state of facts, and one not frequently met with in ordinary business experience, yet we cannot bring ourselves as a reviewing court to the determination that it is entitled to no credence whatever. The trial court had the plaintiff as a witness before it. He was subjected to a most scarching and exhaustive cross-examination by the defendant, and after listening to all the evidence, both direct and that brought out by cross-examination, the trial court believed it and based its findings thereon. We are not convinced that the trial court was in error in so doing.

The judgment is affirmed.

Richards, J., Shenk, J., Langdon, J., Preston, J., Seawell, J., and Waste, C. J., concurred.