[L. A. No. 22227.   In Bank.   Aug. 12, 1952.]

MINNIE HILL, Appellant, v. Estate of CHARLES WEST-
BROOK, Deceased, et al., Defendants; EDWARD J.
WESTBROOK, as Administrator, etc., Respondent.

Emmett E. Patten and Glen A. Duke for Appellant.

Hugh E. Macbeth and Hugh E. Macbeth, Jr., for Respondent.

SCHAUER, J.—This is an appeal from a judgment for defendant administrator in an action on a rejected claim against an estate. Plaintiff and decedent, who were not formally married, lived together as man and wife from 1930 until decedent's death in 1946. Two children were born to them. The creditor's claim was for the lump sum of $10,000 "For services rendered decedent from about August 15, 1930, to date of death [July 31, 1946], . . . consisting of keeping house for him . . . , living with him as man and wife . . . , bearing decedent two children, . . . performing the usual duties of a housewife . . . , and earning a salary from time to time during said period, all of which was turned over to said decedent." Judgment for defendant administrator rests upon findings, supported by the evidence, that any contribution of services or moneys by plaintiff for the benefit of decedent was gratuitous and in contemplation of their reciprocal relationship. We have concluded that under the law governing appellate review (see *Estate of Bristol* (1943), 23 Cal.2d 221, 223 [143 P.2d 689]; *Richter* v. *Walker* (1951), 36 Cal. 2d 634, 640 [226 P.2d 593]) such judgment must be affirmed.

On the first trial of this action plaintiff had judgment for $3,000. The judgment was reversed because it allowed recovery, in a lump sum, not only for services for which plaintiff might have recovered but also for living with decedent and bearing the children. (*Hill* v. *Estate of Westbrook* (1950), 95 Cal.App.2d 599, 602, 603 [213 P.2d 727].) On the first appeal the District Court of Appeal cor-

rectly said, "When a man and woman knowingly live together in a meretricious relationship—in the absence of an express agreement, oral or written, that she be compensated for services performed—there is no implied obligation on the part of the man to compensate the woman for household services rendered by her. . . . Although the parties live together in illicit relationship during the time the services are performed, an express contract to compensate for services performed as a housekeeper has been held valid and enforceable unless made in contemplation of such illicit relationship. . . . Whether the contract was dependent upon the illicit relationship is a question of fact."

At the second trial plaintiff introduced evidence that when she went to live with decedent in 1930 he operated a liquor store, a small restaurant, and a rooming house, and that she rendered services for him by clerking in the store, working in the restaurant, and acting as maid and housekeeper in the rooming house. This evidence was contradicted by testimony of a witness for defendant that plaintiff did not render such services; that plaintiff was unable to work because she was ill; and that the roomers did their own cleaning. Plaintiff introduced evidence that in 1943 she, decedent and their children moved to a house in Monrovia which, decedent often stated, he had bought or was buying for plaintiff and the children; and that plaintiff worked in a shirt factory in Monrovia and contributed her earnings to the support of the family. Plaintiff's counsel announced during the second trial that she was "seeking to recover for her work in the rooming-house, in the hamburger stand, the liquor store, and her contribution that she paid over to him from her salary in the shirt factory."

Plaintiff introduced evidence that various witnesses had, during decedent's lifetime, seen a document in decedent's handwriting which purported to be a will of decedent and which left his property to plaintiff and the children, and evidence of declarations of decedent that he had made such a will. (What became of this will does not appear.) Also in evidence are declarations of decedent that he was grateful for plaintiff's services and that "she would be well fixed" on his death. This evidence was introduced, plaintiff's counsel said, to "show that he had promised—our whole theory is that she expected reward and he expected to pay her" for her services.

Plaintiff took the stand in an attempt to prove the amount of her "earnings and her contributions towards this estate." On the first trial some of these amounts had been before the court by stipulation, and plaintiff had been allowed to testify to a few facts which occurred before the death of decedent. On the second trial no stipulation appears to have been reached and objection to plaintiff's testimony was sustained because of the provision of paragraph 3 of section 1880 of the Code of Civil Procedure that a party to an action against an administrator upon a claim against a deceased person cannot be a witness "as to any matter or fact occurring before the death of such deceased person." Plaintiff's counsel, apparently feeling bound to accept the proscription of the statute, agreed that "We can't get it in," but on this appeal contend that her testimony should have been received because defendant at the first trial waived his objection to her competency as a witness and such waiver should be held to have carried over to the subsequent trial.

Plaintiff relies upon the holding of *Deacon* v. *Bryans* (1931), 212 Cal. 87, 93 [298 P. 30], that a waiver of objection to incompetence of a witness on the first trial of a case continues upon retrial. But it was not incumbent on the trial court, of its own motion, to raise and determine the question whether the holding of the Deacon case applied. Plaintiff (and her counsel presumptively acted in accord with their duty as they saw it at the time), having expressly agreed with the ruling of the trial court which excluded her testimony, cannot now complain of that ruling. (See *Crane* v. *Smith* (1943), 23 Cal.2d 288, 302 [144 P.2d 356]; *Davenport* v. *Stratton* (1944), 24 Cal.2d 232, 242 [149 P.2d 4]; *Parker* v. *Shell Oil Co.* (1946), 29 Cal.2d 503, 514 [175 P.2d 838]; *McClure* v. *Donovan* (1949), 33 Cal.2d 717, 730 [205 P.2d 17].) Furthermore, the want of evidence as to the precise amount of plaintiff's earnings had no bearing on the outcome of the case. The trial court, it appears, found against plaintiff because it believed that her contributions to decedent were made "gratuitously and voluntarily in contemplation of, as a part of, in consideration of and as acts dependant upon the meretricious relationship between plaintiff and said Charles Westbrook," and not because there was no evidence of the amount of such contributions.

We cannot sustain the contention that the evidence shows as a matter of law that "plaintiff rendered services to

the decedent during his lifetime in reliance on the promise of the decedent, actual or implied, to provide for and reward her for the services on his death.'' It was for the trial court to resolve the conflict in the evidence of plaintiff's witnesses and defendant's witness on the question whether plaintiff rendered services in decedent's restaurant, store and rooming house, and to determine whether plaintiff sustained her burden of proving that decedent promised to compensate her and that she rendered her services because of expectation of monetary reward and not because of her regard for decedent. As indicated by the reference to the cited cases in the first paragraph of this opinion the factual determinations of the trial court are conclusive here.

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.