[Civ. No. 136.    Fifth Dist.    Oct. 24, 1962.]

JOAN A. SIMON, Plaintiff and Appellant, v. BANK OF AMERICA, as Executor, etc., Defendant and Respondent; COUNTY OF KERN et al., Interveners and Respondents.

Conron, Heard, James & Hamilton and Calvin H. Conron, Jr., for Plaintiff and Appellant.

Vizzard, Baker, Sullivan & McFarland and Lawrence N. Baker for Defendant and Respondent.

Roy Gargano, County Counsel, Rex Mull, Chief Deputy County Counsel, Donahue & Hastin and Kenneth N. Hastin for Interveners and Respondents.

BROWN, J.—This is an action by appellant on a rejected claim against the respondent Bank of America, executor of the estate of Jennie Monette Hicks, deceased, for services rendered to Mrs. Hicks as companion, housekeeper, nurse, chauffeur and attendant, and for the purchase of clothing and merchandise at the decedent's request, between September 1941 and August 30, 1959, and for advancements, in the sum of $8,000. The claim was rejected and suit was filed. A bill of particulars was demanded and was supplied in the amount of $4,696, showing items commencing October 3, 1946, and ending August 30, 1959.

In the estate proceedings an application was made to set aside the will by contest and appellant's deposition was taken. In this petition appellant was named as one of the respondents, as were also the County of Kern and the First Christian Church, as beneficiaries under the will. Appellant's bequest under the will was $500. Appellant's deposition was taken by the contestant, Alice Cochrum, on May 26, 1961, and she was examined by Mr. Mull, Chief Deputy Counsel for the County of Kern. Mr. Mull's questions concerned appellant's diary, how she made the notes therein, the source of the notes, when she became acquainted with the decedent, and how many times she visited her. Appellant answered that she helped the decedent by taking her to the bank to cash her welfare checks each month, to pay her taxes, and had bathed her. No questions were asked by the Bank of America as respondent herein.

On June 14 and 15, 1961, the court entered an order making

the First Christian Church and the County of Kern interveners.

This action was then tried without a jury and appellant presented as witnesses three of the social welfare workers who had worked on the case of Mrs. Hicks, the decedent, and who had visited the decedent from time to time with regard to the pension which she was receiving from the state. These witnesses, Katherine Sullivan, Angeline Napier and Winnie Bloxom, testified as to their personal observations and evidence was received as to the various reports which were made by them from visits with the decedent. The testimony of appellant's witnesses is summarized as follows: Mrs. Sullivan, one of the social workers who had been assigned to the case of the decedent from 1954 to 1957, testified that she observed the appellant assisting decedent in buying groceries and other supplies, doing some cooking and taking care of her personal needs, paying some bills for her and furnishing the transportation for decedent to pay her bills and do other errands; that she was told by the decedent that appellant bathed her and enumerated on many occasions the services appellant had performed for her and decedent told her "she [decedent] had every intention of seeing that Mrs. Simon was reimbursed for the actual expense to which she had been put, plus additional compensation for her many services," but she did not recall whether the decedent had mentioned that there was an agreement with appellant for such reimbursement and there were no specific amounts of loans or of reimbursements entered in the case record of decedent. The Welfare Department case file concerning the decedent was introduced in evidence and showed that Mrs. Sullivan had received a telephone call from appellant to the effect that the decedent wanted to borrow money from appellant to pay the city taxes but that the appellant was not willing to lend the amount without a signed note, which the decedent refused to give. Mrs. Napier, another social worker, testified that she took over the case of the decedent from Mrs. Sullivan in 1957 and continued with it until the decedent's death; that she had seen appellant assisting the decedent in buying groceries and in cashing her checks at the bank; that the decedent had told the witness that she didn't mind Mrs. Napier's calling appellant to assist her because "it was understood that she would reimburse her some day for all of this"; that decedent told the witness that appellant had paid the taxes, utilities, groceries and other items for her and that the decedent wouldn't take a bath

unless appellant was there to assist her; that decedent told her she intended to reimburse appellant but had not specified any amounts and had not mentioned leaving appellant property by a will; and that the decedent had never mentioned that there was a definite agreement as to such reimbursement. Mrs. Crandall testified that she had been a friend and neighbor of the decedent for many years and that during that time she had seen the appellant helping the decedent by cooking for her, buying groceries, bathing her, and that the decedent would call appellant any time she wanted to go downtown and asked her advice on matters; that decedent said she was going to give appellant some of her property but never mentioned a will. Mrs. Crandall stated that she, also, had assisted decedent a few times. Mrs. Carver testified that she, too, had assisted the decedent in buying groceries, cleaning her house, taking meals to her and transporting her or doing errands for her, and stated that appellant had told her the decedent gave appellant $5.00 every time she cashed her check, but did not mention receiving any other money for the decedent.

Appellant testified, but her testimony was objected to under the deadman's statute, section 1880 of the Code of Civil Procedure, by all respondents. At the conclusion of the trial, motions to strike the testimony of appellant were submitted. In the memorandum decision of the judge he directed judgment for the respondent Bank of America after concluding that there was no credible evidence that there was an agreement to compensate the appellant and such evidence as was presented was vague and indefinite, and he also struck out all of the testimony of appellant under the deadman's rule. Findings of fact and conclusions of law were filed, stating that the deceased was not indebted to the appellant and judgment was entered from which this appeal was timely taken.

Decedent was 96 years of age when she died on December 1, 1960. Her nephew was appointed her guardian on September 28, 1959. Decedent was deaf, had been in the hospital on many occasions, was very senile, had dizzy spells, and according to the records of the Welfare Department, was always falling down at home when she was alone. Her eyesight was impaired by cataracts and glaucoma; she broke her wrist in 1958. Her neighbors and everyone concerned about her felt that she should have been in a rest home. For a while her disabled veteran son lived with her, but predeceased her. Her will was dated February 21, 1955, and her estate was valued at $32,000.

### Did the Court Err in Striking Appellant's Testimony Under the Deadman's Statute?

Appellant states that this point is of minor importance because in her opinion there was substantial evidence to support a judgment for the appellant, notwithstanding the absence of her testimony.

In the will contest the contestant caused the appellant's deposition to be taken concerning the mental condition of decedent, how often she saw decedent and over how long a period of time, and she was cross-examined not by the attorney for the executor but by the attorney for the County of Kern who later became one of the interveners. In this cross-examination she was asked about how long she had known and been with the decedent and the matter, with reference to her bill of particulars, of Hattie Carlock's staying with decedent for a period of six weeks, which was within the direct examination. (*Adams* v. *Herman,* 106 Cal.App.2d 92 [234 P.2d 695].) She was not questioned about the details of her claim against the estate or certain debts which she had testified to on direct examination. This deposition was lodged with the court clerk in the probate proceeding, but there is no reference or indication that the deposition was ever introduced or used in any will contest proceeding or otherwise, nor was it introduced in the action before us. In the will contest the parties in the case now before us were all corespondents and their interests were similar to the extent of upholding the will. The deposition of appellant was not taken or used by the adverse party (respondent in this case) and her testimony on cross-examination did not waive the statute, and in fact she was testifying for the estate. In *Chase* v. *Evoy,* 51 Cal. 618, 620, the court stated that Code of Civil Procedure section 1880 does not operate to prevent such a person from testifying *for* the estate. Even if appellant's testimony could be considered as adverse, it still could be competent against Kern County, a joint respondent in the will contest action. (*Shain* v. *Forbes,* 82 Cal. 577 [23 P. 198].)

A waiver under Code of Civil Procedure section 1880, subdivision 3, made in one trial continues to the second trial. (*Deacon* v. *Bryans,* 212 Cal. 87, 93 [298 P. 30] ; *Hill* v. *Estate of Westbrook,* 39 Cal.2d 458 [247 P.2d 19].) A waiver of objection made at one stage of the taking of testimony is a waiver during the whole progress of that proceeding. (*Ess* v. *Griffith,* 139 Mo. 322 [40 S.W. 930, 931] ; *Deacon* v. *Bryans, supra,* p. 91.)

In *Moul* v. *McVey,* 49 Cal.App.2d 101 [121 P.2d 83], the court said that the use of the deposition taken in the previous guardianship proceeding by the executor constituted a waiver and that in other states the courts have uniformly held that the introduction of testimony previously given lifts the bar of the statute. (*Cole* v. *Sweet,* 187 N.Y. 488 [80 N.E. 355]; *Drvol* v. *Bant,* 183 Cal.App.2d 351, 358-359 [7 Cal.Rptr. 1].)

It is true that the provisions of the statute may be waived by the personal representative, and the taking of a deposition of a survivor amounts to a waiver of the section, whether used or not, in that same action. (*McClenahan* v. *Keyes,* 188 Cal. 574, 576 [206 P. 454].) Here, the deposition was not used in the present action.

In *Shain* v. *Forbes, supra,* 82 Cal. 577, the court held that while the plaintiff was not a competent witness as against the representative of the estate, he would be competent as against other joint defendants whether the judgment could be joint or several. However, in our case the appellant is not asking for judgment against the intervener Kern County, so it would be immaterial whether or not said stricken testimony had been left in as far as this respondent was concerned.

Appellant contends that the statute was also waived by the demand for a bill of particulars, which was furnished. In *Burgermeister* v. *Wells Fargo Bank etc. Co.,* 191 Cal.App. 2d 624 [13 Cal.Rptr. 123], a bill of particulars was demanded and furnished and no comment is made in that case as to the waiving of the statute. However, in *Gough* v. *Security Trust & Savings Bank,* 162 Cal.App.2d 90 [329 P.2d 555], a bill of particulars was demanded and filed and the court held that, " 'A bill of particulars merely amplifies the allegations of the complaint, and it is deemed to constitute a part of that pleading. . . . It has the effect merely of limiting plaintiff's evidence to the specific items therein.' It does not take the place of necessary evidence' " to prove the claim. (*Silva* v. *Linneman,* 73 Cal.App.2d 971, 975 [167 P.2d 794].)

Therefore, a bill of particulars is not evidence, but only a part of the pleading.

In *Millet* v. *Bradbury,* 109 Cal. 170, 172 [41 P. 865], the court said: "The bill of particulars which was furnished to the defendants is to be regarded as an amplification of the complaint, and for the purpose of determining the plaintiff's right of recovery, or the admissibility of evidence that may be offered in support of her claim, is to be regarded as if it had been incorporated into the complaint as originally filed."

Volume 6 of Wigmore on Evidence, Third edition, 1940, section 1848, at pages 388-389, states: "To avoid unfair surprise, the claimant's *pleadings* may be required to state with greater particularity the facts upon which his claim is based. For example, in many jurisdictions, by statute, the plaintiff, in an action for a sum of money made up of several items incurred on *an account,* is required to deliver before trial to the defendant or to annex to the declaration an *itemized statement* of the particulars, on penalty of being forbidden to prove the account. But this is no more than a rule of Pleading; the distinction being that by a rule of Evidence he could have proved his case by other evidence if he failed to give the notice, while by this rule of pleading he is confined to the particulars stated, which thus become virtually allegations of his declaration."

The procedure governing bills of particulars is set forth in the Code of Civil Procedure under the general rules of pleading and not under evidence. We therefore find that while a bill of particulars is generally used in actions on contract, pleadings are to be liberally construed (Code Civ. Proc., § 452) and that the demand for a bill of particulars is not a waiver of the deadman's statute. In the bill of particulars furnished there was a $415 item for money borrowed in February 1959.

Appellant, at oral argument, cited and relied on *Bernkrant* v. *Fowler,* 55 Cal.2d 588 [12 Cal.Rptr. 266, 360 P.2d 906]. That case is too remote in its facts to constitute persuasive authority for appellant's position in the case at bar. It was there concluded that where the plaintiffs' action against an executrix did not seek a money judgment, enforceable against the assets of the estate, but sought only a determination that their debt to the decedent had been discharged, they were not precluded by subdivision 3 of section 1880 of the Code of Civil Procedure from testifying to events occurring prior to the death of decedent. The holding obviously rests on the fact that the type of action there involved and the nature of the relief sought brought that case outside the ambit of the privilege. It therefore does not operate as a liberalization of the statute.

Appellant also refers to volume 84 of American Law Reports, Second, page 1356, as indicating the liberalization of the deadman's statute in the United States. The California cases referred to, such as *Bailey* v. *Moshier,* 35 Cal.App. 345 [169 P. 913], hold that the mortgagor can testify as to pay-

ments made by him before the decedent's death on the basis that such testimony relates to a question of fact and not to a claim or demand against the estate. *Sedgwick* v. *Sedgwick,* 52 Cal. 336, involved a demand brought in favor of the estate and claimant was allowed to testify to rebut the executor's claims for credits. In *Beyl* v. *Robinson,* 179 Cal.App.2d 444, 456 [4 Cal.Rptr. 18], the testimony was allowed where the party was not proceeding as a creditor but was seeking to defeat a money claim of the estate against him.

The present condition of the deadman's statute is discussed in the California Law Revision Report of February 1957, which does not indicate any liberalization as far as claimants against estates are concerned but possibly in other phases, and in general, favors more strict construction thereof. There is sympathy for a liberalization or a revision or repeal. In a dissenting opinion in *Roy* v. *Salisbury,* 21 Cal.2d 176 [130 P.2d 706], Mr. Justice Traynor states that revision or repeal of this section (Code Civ. Proc., § 1880) cannot be accomplished by the court, but only by the Legislature. Revision of this section was recommended by the California commissioners on that subject in 1900.[1]

### Substantial Evidence Supporting the Findings of Fact and Judgment.

The question before us is whether or not there is any satisfactory evidence of any agreement to compensate the appellant or evidence of the extent and nature of appellant's claimed services to the decedent or the value thereof. Though there was no testimony by any of the witnesses as to the value of the services rendered, the courts have generally held that the trier of the facts may fix the reasonable value of such services. (*Burgermeister* v. *Wells Fargo Bank etc. Co., supra,* 191 Cal.App.2d 624, 630.)

As to the testimony received by the court as to the proof of the contract or agreement which consisted of a statement by Mrs. Sullivan that decedent told her that "she [decedent] had every intention of seeing that Mrs. Simon was reimbursed for the actual expense to which she had been put, plus additional compensation for her many services"; a statement by Mrs. Napier that "it was understood that she [decedent] would reimburse her [appellant] someday for all of this"; and a statement by Mrs. Crandall that decedent told

---

[1]Senate Bill 1166 was introduced but not enacted in the California Senate April 1959 repealing subdivision 3, section 1880 of the Code of Civil Procedure and adding hearsay exceptions.

her she "didn't have any money now but then she was just going to reimburse her [appellant] and leave her some of her property," such is to be viewed with caution. This matter is discussed in *Belletich* v. *Pollock*, 75 Cal.App.2d 142, 147 [171 P.2d 57], where the court in reversing the verdict in favor of the claimant stated that these transactions must be viewed with "most scrutinizing jealousy," that such oral evidence, without satisfactory corroboration, is the weakest kind of evidence known to the law, and that such declarations or admissions are received with caution. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529].)

In *Austin* v. *Wilcoxson*, 149 Cal. 24, 29 [84 P. 417], the court said: ". . . it is not stating it too strongly to say that evidence so given under such circumstances must appear to any court to be in its nature the weakest and most unsatisfactory."

Here, the appellant's witnesses, both on direct and cross-examination, failed to be specific as to times and places, or any information which has any relation whatsoever to the bill of particulars.

In the *Burgermeister* case, *supra*, 191 Cal.App.2d 624, the claimant was a nurse and there was testimony that she was on call at any time of the day or night for a period of 20 years at the house of the decedent. In that case, the evidence supported her claim that she was to receive $10,000 by means of a will; the decedent failed to make such a testamentary provision, and the court allowed that sum. In our present case, unlike the *Burgermeister* case, the decedent did leave the appellant $500 in her will. We believe that there was not sufficient evidence to establish the position of the appellant that she was entitled to any greater sum.

In *Payne* v. *Bank of America*, 128 Cal.App.2d 295 [275 P.2d 128], the court said at page 307: "Where services are rendered in the mere expectation of a legacy whose amount is to be at the entire discretion of the testator, without any contract, express or implied, to pay for the services, there can be no recovery for the reasonable value thereof."

And continued at pages 307-308: "In the instant case, the court could legitimately conclude from the evidence and from the conversations as to his intentions attributed to Priester that plaintiff was relying solely upon the anticipated testamentary generosity of his friend Priester; that at the time of the proffered services he did not expect to be paid for them but to be remembered in the will. Under the holding of the

authorities herein cited, a person who expects to be benefited by a legacy cannot later resort to an action for the reasonable value of his services where a mere expectation is shown and neither an express nor an implied contract to pay for the services is established.''

Appellant further claims that she advanced certain sums to and on behalf of the decedent, being the difference between the amount of the pension and the amount of the approved budget, but we can find no evidence of payments by appellant for the decedent, though there is listed in the bill of particulars an amount of $415 alleged to have been advanced for clothing and $40 cash. The welfare workers did indicate that decedent had received $900 from the sale of certain property in 1949 and that said amount was deposited in decedent's bank and the balances as given by decedent are listed in the various welfare reports, on February 9, 1959, showing a balance of $32.53.

We have concluded that the decision of the trial court was correct.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.