[Civ. No. 13903. First Dist., Div. One. Dec. 27, 1948.]

VIOLA THOMPSON, Respondent, v. M. SUE HICKMAN, as Executrix, etc., Appellant.

Bohnett, Hill, Cottrell & Bohnett and Maurice J. Rankin for Appellant.

A. Andreuccetti and John H. Machado for Respondent.

BRAY, J.—Appeal by defendant from a judgment after verdict for $14,205.50 on a claim against the estate of Jessie Williamson, deceased.

The grounds of appeal are: (1) variance between the complaint and the proof at the trial; (2) plaintiff's evidence inherently improbable and hence insufficient to support the judgment; (3) the alleged agreement was abrogated; and (4) prejudicial misconduct of plaintiff's counsel.

### 1. VARIANCE

The complaint alleged a common count for services rendered by plaintiff to deceased, at her special instance and request, in caring for and nursing deceased from June, 1939, to her death on August 9, 1946, based upon a verified claim for such services presented to the estate. At the opening of the trial, plaintiff stated to the jury that the action was one for services rendered by plaintiff under an agreement with deceased in which plaintiff was to be paid therefor, by a devise of deceased's home. No evidence was introduced to show an express agreement to pay the reasonable value of the services, but the entire trial was had upon the theory of an oral agreement by deceased to leave plaintiff the home, in consideration of plaintiff remaining with and caring for deceased as long as she might live; and that deceased having failed to carry out her agreement, plaintiff was entitled to the reasonable value of her services, less the moneys she had received therefor in the lifetime of the deceased.

Clearly there was a variance. However, at no time during the trial was any claim of variance made nor was there any objection to the introduction of evidence of the oral agreement. Moreover, both plaintiff and defendant proceeded and the case was presented to the jury on this theory. Thus, the defendant was not misled by the variance or prejudiced in any way. "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Code Civ. Proc., § 469.) Where a matter has been treated as in issue at the trial and a finding made upon that issue, the complaint becomes immaterial. (*Boro v. Ruzich,* 58 Cal. App.2d 535 [137 P.2d 51].)

### 2. PLAINTIFF'S EVIDENCE NOT INHERENTLY IMPROBABLE

Plaintiff introduced direct and indirect evidence of the oral promise to devise the home. Plaintiff did not testify, as the defendant raised the bar of section 1880, subdivision 3, of the Code of Civil Procedure.

Jessie Williamson, the deceased, was a retired school teacher. At the time of her death in 1946 she was 86 years old. In 1938, she had engaged plaintiff as a housekeeper and practical nurse. Plaintiff took care of deceased until her death in 1946. The duties of plaintiff were many, including housekeeping, buying groceries, cooking the meals, and caring for deceased in every way. Deceased was an invalid during most of these final years, unable to do anything for herself. She was confined to a wheel chair and had Parkinson's Disease, which put a tremor in her hands so that she could not act for herself. Plaintiff had to feed the deceased, and tend to all of her bodily wants, frequently lifting deceased bodily from the wheel chair into a chair designed to take the place of a lavatory. Deceased was involuntary—could not control her bowels—and plaintiff had to do a big wash almost every day. Plaintiff's performance of her duties was described by witnesses as "most excellent," "very exceptional," and "intensely earnest." No evidence was introduced by defendant that the services were not entirely satisfactory.

Alma Williams testified that in June, 1939, at a conversation between deceased, plaintiff and the witness, plaintiff stated that she had been thinking of going away to school. Thereupon deceased stated: "If you'll promise to stay with me I'll see that you're taken care of, and I'll leave this home and everything here for you." Again in September, 1941, when the witness asked deceased to sell her her typewriter, deceased stated in the presence of plaintiff, "Well, you see it's this way, the house and everything as it stands is going to be Viola's, so any arrangements you make about the typewriter, you'll have to talk to her about it." On another occasion, in 1944, deceased stated in commenting on the condition of the kitchen, "Yes, Viola [is] fixing this up . . . She likes her things to be nice. . . . This is Viola's house anyway, and so when she does this, she's doing it for herself, she likes to have her things look nice and clean."

Dr. L. T. Smith, deceased's dentist, testified that in 1940, in a conversation with deceased at which plaintiff and the witness's nurse were present, the following occurred: "I said, 'Well, Miss Williamson, it's fortunate you have someone to look after you and take care of you like this girl,' meaning Miss Thompson. 'Yes,' she said, and we talked, and she said, 'She'll never have to want,' she says, 'She's always going to have a home.' "

Mrs. Livonia Gerow testified that she was a registered nurse and operated a rest home, where in March, 1941, deceased was a patient for two weeks; that during that time plaintiff took care of deceased at night, and that on one occasion when plaintiff stated to deceased that plaintiff could not do the work at home and also take care of deceased at night, deceased said: " 'Viola, don't leave me,' she said, 'Stay with me,' and she said, 'If you stay with me, I'll give you the home.' That was while I was there."

Mabel Miller testified that in either 1943 or 1944, deceased stated to her, " 'Well, Viola has been so good to me and kind,' she says, 'I'm going to leave her my house.' "

Dr. Hopkins testified: ". . . on several occasions when I've seen her or had seen her and talked to her regarding the care that she was getting from Miss Thompson, she would make the statement that, 'Well, she ought to take good care of me because sometime this home will be hers.' "

Mrs. Anderson testified that deceased made statements to her that she intended leaving the home to plaintiff. " 'It won't make any difference,' she says, 'how it's painted just so it's painted to suit her because,' she says, 'it's to be Viola's anyway when I'm done with it.' . . . The girls around were making quite good salaries, and she says, 'Viola needn't to worry because,' she says, 'I'm leaving this home to Viola when I'm through with it, and,' she says, 'she'll have a home and she'll have an income with it,' . . ."

Defendant argues that the testimony of Mrs. Williams is entitled to no weight because she admitted a very close friendship with plaintiff, was renting a cottage from plaintiff at a nominal rental, and had attempted on one occasion to persuade deceased to make a gift deed to plaintiff of the property. All these were matters for the jury, and do not as matter of law make the witness's testimony inherently improbable.

On the alleged improbability of the claimed oral agreement, defendant emphasizes the fact that during all of the time that plaintiff worked for deceased plaintiff was being paid, in addition to receiving board and room. From 1941 to 1943 she received $84 per month, then $90 per month until June, 1945, $125 per month until July 16, 1945, and $140 per month until the death of deceased in August, 1946. In the rear of the home was a cottage which plaintiff rented from deceased for $15 per month, and later $10 per month, and then rerented apparently at the same rental. Attorney Henri Hill, who had been a former pupil of deceased, became

her attorney in fact in 1941, and her guardian in May, 1945. He testified that on June 5, 1945, he gave plaintiff a written memorandum of their conversation which fixed plaintiff's salary at $125 per month and set forth the hours of work, and what she was to pay for her relief when off duty. If she worked that time herself she was to receive the relief pay as overtime. It also set forth the rental arrangement of the cottage. A month and a half later the salary was increased to $140 per month. Although Hill was constantly in contact with plaintiff from 1941 on, plaintiff at no time told him of deceased's agreement, not even during the negotiations for increases in salary. In May or June, 1945, plaintiff stated to Hill that deceased had told plaintiff she was going to leave her the house and wanted to know what was in deceased's will.

While these and other circumstances stressed by defendant are susceptible to the inference that they are inconsistent with the fact of an agreement to devise, they are not as matter of law inconsistent with such an agreement, nor do they make the claim of such an agreement inherently improbable.

In 1941, deceased executed a codicil to her will in which she bequeathed the sum of $250 to plaintiff, which codicil was still in effect at the time of her death. Defendant argues from this fact that as deceased was a woman of integrity, the fact that she did not make the devise to plaintiff in her will is conclusive proof that no such agreement was ever made. If this argument were sound (and it is not), no oral agreement could be enforced, for the very failure to carry out the agreement would completely abolish it.

*Long* v. *Rumsey,* 12 Cal.2d 334 [84 P.2d 146], in which the court upheld the defense of the statute of limitations in a claim for services rendered an aunt 16 years prior to the latter's death, has no application to the facts of this case. Neither has *Herbert* v. *Lankershim,* 9 Cal.2d 409 [71 P.2d 220], where the facts were entirely different. Moreover, the court in the latter case held that there was no showing of any substantial services having been rendered by the claimant. Here there is no question but that plaintiff performed extremely onerous duties over a long period of time. While in the Lankershim case the court used language which might indicate that a different standard than preponderance of evidence is required of a plaintiff in cases of this character, that such is not the law is clearly stated in *Ferrari* v. *Mambretti,* 58 Cal.App.2d 318. 322, 323 [136 P.2d 326]: ''We do not

understand that the Lankershim case made a new rule in appeals involving the question of the sufficiency of the evidence. . . . It is true that the court quoted with approval from an early English case holding that in proceedings of this kind the evidence of the oral admissions must be 'satisfactory' and 'convincing.' The use of these words has been frequently criticized in our decisions, and we do not understand that, in the Lankershim case, the Supreme Court was departing from the rule that the weight of the evidence, and particularly the credibility of the witnesses, were each a matter for the trial court or jury.''

### 3. AGREEMENT NOT ABROGATED

The agreement to devise was made in 1939, at a time when plaintiff was receiving a salary, probably $84 per month, and room and board. Thereafter the salary rate was changed three times under agreement between plaintiff and Hill. The latter testified that the increases, with one exception, were made at plaintiff's insistance. Defendant contends that these agreements as to salary abrogated the agreement to devise. This contention, however, ignores the fact that as late as 1945 deceased stated ''This is Viola's house'' and that in the same year plaintiff told Hill that deceased had promised to leave the home to her. While the circumstance that plaintiff failed to disclose to Hill during the making of the agreements as to salary the fact that deceased had agreed to devise the home to her, is a matter for evaluation by the jury on the question of whether such agreement actually existed, it is not inherently inconsistent with plaintiff's contention that she was to receive the home in addition to her salary. At the time the agreement was made in 1939 she was receiving a salary and her board and room. The fact that her salary was increased did not necessarily abrogate the agreement to devise. Whether it did was a question for the jury.

### 4. MISCONDUCT OF COUNSEL

The most serious question on this appeal is the alleged misconduct of plaintiff's counsel. When Attorney Hill was testifying he was asked to relate a certain conversation with plaintiff. He stated that he had made a written memorandum of the conversation and that he had given plaintiff a copy of it. He was then asked to read his copy. Thereupon the following occurred: ''MR. ANDREUCCETTI [counsel for plaintiff]: Now, one second, your Honor, I'm going to object to that. It may be admissible if Viola Thompson will take the stand, and we'll

offer it, and we'll let Mr. Rankin [counsel for defendant] at that time introduce it in evidence. MR. RANKIN: Don't talk so loud, Andy. MR. ANDREUCCETTI: No, let's be fair to the jury and the Court, give everything to the jury, don't try to cover up. MR. RANKIN: No, Mr. Andreuccetti. MR. MACHADO [counsel for plaintiff] : That's the vice of the thing. They're afraid to let Viola Thompson take the stand. MR. RANKIN: Now, I'm going to move for a mis-trial of this case. THE COURT: Let's not argue the point now.'' Later defendant renewed her motion for a mistrial because of this statement that the defendant was afraid to let the plaintiff testify. This the court denied.

Thereafter plaintiff took the stand as a witness on her own behalf. When asked by her counsel when she first met deceased, defendant objected under the provisions of section 1880, subdivision 3, of the Code of Civil Procedure, which provides : ''The following persons cannot be witnesses : . . . 3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person.'' Counsel for plaintiff then stated : ''In other words, Mr. Rankin, for the purpose of the record, you will not waive the inhibition of Section 1880 of the Code of Civil Procedure on behalf of Sue Hickman, the executrix of The Last Will and Testament of the Estate of Jessie Williamson, Deceased?'' No further attempt was made to interrogate plaintiff.

In argument plaintiff's counsel stated : ''On several occasions he told you that not one time when Miss Thompson asked for more money was it denied her. I say to you, ladies and gentlemen of the jury, she couldn't take the stand and deny it. Mr. Rankin wouldn't put her on the stand to get her version of the story. He puts her agent on the stand, Mr. Henry Hill, and he is afraid to put that young lady against a lawyer, a man that has practiced years, years and years, and I am sure if Miss Thompson had testified that truth would ring from her voice. MR. RANKIN: I don't like to do it,—— MR. ANDREUCCETTI: I am certainly entitled to comment.'' Thereupon defendant cited the remarks as error and requested the court to instruct the jury to pay no heed thereto. The court gave no instruction to the jury at that time, but stated that it would ''make the situation very clear to the jury why'' plaintiff did not testify.

In its final instructions the court gave the following instruction offered by defendant: "Section 1880 of the Code of Civil Procedure of this State provides that a person in whose behalf an action is prosecuted against an executor upon a claim or demand against the estate of a deceased person cannot be a witness as to any matter or fact occurring before the death of such deceased person.

"Hence, I instruct you that the law of this state prohibited Viola Thompson, the plaintiff herein, from testifying as to any matter or fact occurring before the death of Jessie Williamson, and you are not entitled to draw any inference in favor of the plaintiff or against the defendant by reason of the refusal of the Court to permit the plaintiff to testify as to any matter of fact occurring before Miss Williamson's death.

"You have no right to entertain any prejudice against the defendant by reason of the invoking of this law which was enacted to place the decedent, whose lips are sealed by death, in as nearly as possible equal position as that of the living claimant. You have no right to speculate what plaintiff might have testified to had the law permitted her to do so, nor have you any right to be prejudiced against the defendant who represents the estate of the decedent by reason of plaintiff's incompetency to testify to such facts."

The court then added the following sentence of its own motion: "However, the defendant could have waived this inhibition and allow the plaintiff to testify in this action." An executor may waive the privilege of the section. (*Kinley* v. *Largent*, 187 Cal. 71 [200 P. 937]; *Deacon* v. *Bryans*, 212 Cal. 87 [298 P. 30].)

It is clear under the authorities that counsel's comment was misconduct and error, but the real question is whether it was cured by the admonition given the jury.

Wigmore states: "Of course, a rule of evidence *other than a rule of privilege* for the party is a means of excluding evidence which he is always entitled to take advantage of; and his objection to prohibited evidence (or his failure to waive an objection) cannot in any way be construed to his disadvantage, since by hypothesis the evidence is prohibited, not for his personal sake on grounds independent of the value of the evidence, as privileged evidence is (*post*, sec. 2196), but because of the untrustworthiness of the evidence. No doubt a party usually does take advantage of such rules because the forbidden evidence is unfavorable, and no doubt the opponent constantly seeks by innuendo to give an unfavorable meaning

to such objections. But the rules of evidence could never be enforced if parties were not guaranteed free scope in calling attention to the impending violation of the rules; and it is universally assumed and understood that no inference can lawfully be urged in consequence of such objections.'' (2 Wigmore (3d ed.) § 286, p. 168.)

The California courts have not passed upon this precise question. The nearest approach to it is *Roy v. Salisbury,* 21 Cal.2d 176 [130 P.2d 706], where testimony was permitted to be given by a witness who appellant claimed was incompetent under the ''Dead Man's Statute.'' The court held that even though it might have been error, it was not prejudicial since there was adequate evidence to support the judgment without that particular testimony.

In his dissenting opinion Justice Traynor questions the wisdom of the ''Dead Man's Statute,'' as does Wigmore. (2 Wigmore (3d ed.) § 578.) (See, also, 15 So.Cal.L.Rev. 523.)

A privilege somewhat analogous to that under this statute arises under section 1322 of the Penal Code, which provides that neither husband nor wife is a competent witness for or against one another in a criminal action except with the consent of both; and section 1881, subdivision 1, Code of Civil Procedure, which makes the same provision as to civil actions. The attitude of the courts concerning this privilege is interesting. In *People v. Heacock,* 10 Cal.App. 450 [102 P. 543], the district attorney commented upon the fact that defendant did not have his wife testify. At that time the Penal Code (§ 1323) provided that the failure of a defendant to testify could not be used against him, which provision was held to make it error for the district attorney to comment upon the defendant's failure to testify. In the Heacock case, the court said (p. 456) that the question as to the effect of the comment on the failure of the wife to take the stand was a new one in this state, and that ''As the case must go back for a new trial, it is perhaps unnecessary to go further than to advise that the district attorney refrain from such comment hereafter. The reason which underlies the provisions of section 1323 applies with much force to the wife, who is made incompetent to testify for or against her husband in a criminal action, except both consent. The wife may be willing to testify, but the husband may not consent and to put him in the position of refusing and subjecting his defense to comments for avail-

ing himself of a statutory right might be very prejudicial.'' (Pp. 456-7.)

Then in *People* v. *Singh,* 182 Cal. 457 [188 P. 987], after pointing out that the rule of the common law that the wife was absolutely incompetent to testify against her husband had been modified in this state so that she could testify with his consent, the court held that for the defendant merely to object to her testifying on the grounds of incompetency, irrelevancy and immateriality of the questions asked her, did not raise the privilege; that ''If one spouse, a party to the action and present in court, relies upon the incompetency of the other to testify, the objection must be made at the time and on such grounds as to bring clearly before the court the question of the incompetency of the witness, or, if this is not done, the privilege will be deemed to have been waived.'' (P. 484.)

In *People* v. *Terramorse,* 30 Cal.App. 267 [157 P. 1134], the record showed that the defendant's wife was antagonistic towards him. Upon argument, the prosecuting attorney commented upon the fact that the defendant had refused to permit his wife to be a witness in the case. The court held: ''In making the foregoing comment the prosecuting officer was guilty of prejudicial misconduct which counsel for the defendant immediately called to the attention of the court, and requested that the jury be instructed to disregard it. The court did not give such an instruction as the defendant asked and was entitled to have given.'' (P. 273.) However, the court showed what appears to be the attitude of all courts in California considering the subject, namely, a reluctance to hold the comment completely prejudicial, for it took the sting out of the quoted statement by saying that had the trial of the case proceeded with proper ''decorum and courtesy,'' this instance of misconduct of the prosecuting attorney (and one other), might not have been sufficient in themselves to warrant a reversal of the verdict.

Following this case came *People* v. *Moore,* 111 Cal.App. 632 [295 P. 1039], where, in a prosecution for assault with a deadly weapon, the district attorney asked defendant whether she would object if her husband was called as a witness, and upon her stating that she would leave the matter to her attorney, the district attorney then called the husband and asked him if he was willing to testify if his wife would give her consent. Thereupon defendant's counsel set up the statutory privilege. The court held that this action of the district attorney was unfair, but not prejudicial. The court held that

the proper procedure is for the district attorney to call the husband in the presence of the jury, and then if the defendant objects to his testifying, "the fact of her unwillingness would be manifest to the jury, with whatever incidental effect her refusal to give consent might have upon them." (P. 634.)

In *People* v. *Briggs,* 20 Cal.2d 42 [123 P.2d 433], in a prosecution for murder, the following occurred: "During the argument of appellant's counsel, he told the jury: '. . . The prosecution would like to have you speculate as to the wife; they say they could not call the wife. The District Attorney, with the Judge, know that calling the wife is a question of privilege; the defendant could exercise the privilege if she were called by the prosecution, but I don't think we would have exercised the privilege.' At this point, the trial judge said: 'There is a rule of law which provides that the wife cannot testify against the husband without his consent. But it also has been held misconduct for the District Attorney to call the wife to the witness stand and force the defendant into a situation where he has to either accept the testimony of the wife or make objections.' " (P. 47.) The court held (p. 47): "Although the comment of the trial judge was not entirely accurate, it is obvious that he was stating to the jury the limitation upon the right of the district attorney to present the testimony of the wife. Considering all of the circumstances under which the remark was made, it did not prejudice the appellant's rights."

In *People* v. *Klor,* 32 Cal.2d 658 [197 P.2d 705], in a prosecution for assault with a deadly weapon with intent to commit murder, the prosecuting attorney called the defendant's wife as a witness. Some colloquy followed between the court and counsel as to whether she had been subpoenaed as a witness. The defense counsel asked if section 1881 of the Code of Civil Procedure had been abolished. The prosecuting attorney remarked that the privilege of a defendant to refuse to allow his wife to testify against him must be claimed. At argument, among other matters concerning the failure of the defendant to permit the wife to testify, he stated, in effect, that the jury was entitled to know why she did not testify. The defendant assigned the statement as misconduct. The court admonished the jury that this statement was merely counsel's own viewpoint, and then told both sides to "stay to the record." The prosecuting attorney again commented on the wife's failure to testify. Defendant again assigned the statement as improper. The court merely stated that it had

already instructed the jury that it wanted both sides to confine themselves to the record and wanted no further comment on that matter. On appeal, it was held that the conduct of the prosecuting attorney was "improper and unwarranted," but that in view of an instruction given by the court to the effect that neither side was required to call as its own witnesses all persons shown to be present or who might appear to have some knowledge of the matters on trial, and the fact that the evidence clearly established the guilt of the defendant, the alleged misconduct was not so improper as to require a reversal.

This court recently has had occasion to consider the question of the effect of comment on exercise of the privilege by a husband in a criminal case in *People* v. *Harmon, ante,* p. 55 [200 P.2d 32]. We there held that such comment was not prejudicial.

Thus, we find that with the exception of the Heacock case, where the court did not hold the comment to be prejudicial, but advised against it, based on an analogy to section 1323 of the Penal Code, which has since been repealed, and the Terramorse case, in which the court indicated that the error could have been cured, the California courts, while holding that comment on the exercise of this privilege is error, have uniformly refused to consider it prejudicial. This is true, especially where the court has given some instruction concerning it, even though "not entirely accurate," as in the Briggs case, or merely that the remarks were the prosecuting attorney's own viewpoint and that both counsel should stick to the record, as in the Klor case.

In view of this situation, the cases holding that the privilege must be asserted and therefore the prosecuting attorney must first call the wife to the stand, thereby bringing forcibly to the attention of the jury the fact that the defendant is asserting the privilege, and the analogy between that type of privilege and the one under the "Dead Man's Statute," we are required to hold that in the case at bar the comment, although erroneous, was not prejudicial. Certainly here the evidence for plaintiff is as strong as the evidence for the People in the Klor case, where one of the chief witnesses for the prosecution repudiated testimony corroborating defendant, which he had given at the preliminary examination. In the case at bar, the court in the quoted instruction told the jury at some length that because of the exercise of the privilege no inference either in favor of plaintiff or against defendant could be drawn, no prejudice

against defendant must be entertained nor should they speculate upon what plaintiff's testimony might have been. Although the sentence to the effect that the defendant could have waived the privilege might better have been omitted, it was no more harmful in view of the strict admonition preceding it, than having the jury witness the defendant exercising the privilege, which the cases hold he must do in full presence of the jury.

Defendant attempts to distinguish the "Dead Man's Statute" privilege from the wife's and husband's privilege, by saying that the former comprises both incompetency and privilege, whereas the latter is privilege alone. In view of the fact that it can be waived, we are unable to see any distinction between the two, with respect to the issues in this case. Certainly a privilege given a defendant in a criminal case can have no less standing than one given to a litigant in a civil case.

■ Defendant's closing brief argues that the amount of damages awarded was not supported by the evidence, because, it is contended, due allowance was not made for all the moneys which plaintiff received from deceased plus her room and board. In argument, defendant values plaintiff's board and room at $100 per month for the years plaintiff was with deceased. Based upon that valuation, and the moneys paid to plaintiff, defendant argues that plaintiff received for her services a sum averaging $2,400 a year. While the estimate of board and room charge seems a bit on the high side, still, accepting defendant's figure as correct, there is ample evidence to support the jury's findings. The testimony showed that the services rendered were exceptional, and that their reasonable value ranged from $300 to $630 a month. Since a period of over seven years is involved, it is clear that had the jury found the reasonable value of the services to be as low as the sum of $375 per month, and allowed an offset of $200 per month as urged by defendant, the amount awarded by the jury would still be less than the difference between the total of those amounts.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 24, 1949. Edmonds, J., Traynor, J., and Schauer, J., voted for a hearing.