[L. A. No. 25309.   In Bank.   May 19, 1959.]

HARRY TRABIN, Respondent, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation), as Executor, etc., et al., Appellants.

Clement H. Jacomini, Lever & Anker and Sidney Dorfman for Appellants.

Samuel Duskin and David S. Smith for Respondent.

GIBSON, C. J.—Plaintiff brought this action against Mr. and Mrs. Milton Kauffman, alleging that he had supplied household furnishings to them at an agreed price of $18,245.42 and that only $2,332.30 had been paid, leaving a balance of $15,913.12. The answer admitted the existence of an agreement between plaintiff and the Kauffmans but alleged that the price agreed upon was $10,000 and that the balance due plaintiff was $7,667.70. After the answer was filed, Mr. Kauffman died, and the action was continued against the executors of his estate and Mrs. Kauffman. The court found in favor of plaintiff, and defendants have taken this appeal.

Six invoices bearing plaintiff's letterhead and addressed to "Mr. and Mrs. Milton Kauffman" were introduced into evidence by plaintiff. Each of the invoices sets forth an itemized list of household furnishings and their respective prices, with an over-all figure below. At the bottom there appears the statement, "It is understood and agreed that title in above merchandise remains vested in seller until fully paid for," and the word, "Signed," followed by the signature, "Milton Kauffman." The over-all figures on the six invoices total $18,245.42.

When plaintiff sought to examine Mrs. Kauffman as an adverse party under section 2055 of the Code of Civil Procedure, the executors objected to her giving any testimony, claiming that she was disqualified as a witness by subdivision 3 of section 1880 of the Code of Civil Procedure.* The objection was overruled, and she testified that she and her husband requested plaintiff's son, Bernard Trabin, to visit their home in Carlsbad with a view to furnishing it at a cost not to exceed $30,000. Bernard Trabin went with Mr. and Mrs. Kauffman to their home where they pointed out the rooms to be furnished and described the kind of furniture desired. Mrs. Kauffman stated that all of the furnishings listed in the invoices were delivered by plaintiff and that the signature on the invoices was that of Mr. Kauffman. She acknowledged that only $2,332.30 of the total bill of $18,245.42 had been paid.

Bernard Trabin, whose sole financial interest in his father's business was that of a salaried employee, testified to substan-

*Section 1880 of the Code of Civil Procedure provides: "The following persons cannot be witnesses: . . . 3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

tially the same facts as those related by Mrs. Kauffman, except that he did not identify the signature on the invoices.

Defendants did not introduce any evidence.

### Appeal of the Executors

The evidence is clearly sufficient to support the judgment against the executors if Mrs. Kauffman's testimony was properly received. The executors urge, however, that her testimony was not admissible by reason of subdivision 3 of section 1880 of the Code of Civil Procedure. (See footnote, p. 151.)

■ At early common law witnesses having a direct pecuniary or proprietary interest in the outcome of a case were disqualified on the theory that permitting them to testify would often lead to perjury which would go undetected and that more injustice would result from receiving their testimony than from excluding it. In the nineteenth century this general disqualification was recognized to be unsound and was abolished by legislative reform. However, in this country, unlike England, an exception was made, and the common-law rule was to varying extents kept in force with respect to cases involving the estates of deceased persons by statutes like subdivision 3 of section 1880. The exception was apparently based on the view that, because the lips of a decedent were sealed, there was too great a danger that interested survivors would take advantage of his estate. (For historical discussion see 2 Wigmore on Evidence (3d ed. 1940), pp. 674, 695-701; Chadbourn, *History and Interpretation of the California Dead Man Statute: A Proposal for Liberalization*, 4 U.C.L.A. L. Rev. 175.) Writers in the field of evidence have vigorously attacked such legislation, reasoning in substance that it represents an anomalous retention of a discredited common law doctrine and is productive of injustice at least as great as, and more concrete than, the evil sought to be prevented. (See 2 Wigmore on Evidence (3d ed. 1940), pp. 695-701; McCormick on Evidence, pp. 142-144; Chadbourn, *History and Interpretation of the California Dead Man Statute: A Proposal for Liberalization*, 4 U.C.L.A. L. Rev. 175, 206 et seq.; Hale, *The California "Dead Man's Statute,"* 9 So. Cal. L. Rev. 35, 43 et seq.)

■ This court has been reluctant to extend the effect of subdivision 3 of section 1880 beyond what is compelled by its language and in many cases has narrowly construed the statute against the disqualification of a witness and in favor of the admissibility of evidence. (See *Todd* v. *Martin*, 4 Cal.

Unrep. 805, 810-811 [37 P. 872]; *Chase* v. *Evoy*, 51 Cal. 618, 619-620; *Estate of Wieling*, 37 Cal.2d 106, 109 [230 P.2d 808]; *Jones* v. *Clark*, 19 Cal.2d 156, 161 [119 P.2d 731]; *Porter* v. *Van Denburgh*, 15 Cal.2d 173, 176-177 [99 P.2d 265]; *Badover* v. *Guaranty Trust etc. Bank*, 186 Cal. 775, 781 [200 P. 638]; *Cullen* v. *Bisbee*, 168 Cal. 695, 698-699 [144 P. 968]; *Wadleigh* v. *Phelps*, 149 Cal. 627, 640 [87 P. 93]; *Bollinger* v. *Wright*, 143 Cal. 292, 296 [76 P. 1108]; *Calmon* v. *Sarraille*, 142 Cal. 638, 642 [76 P. 486]; *City Savings Bank* v. *Enos*, 135 Cal. 167, 172 [67 P. 52]; *Joost* v. *Sullivan*, 111 Cal. 286, 297 [43 P. 896]; *Myers* v. *Reinstein*, 67 Cal. 89, 91-92 [7 P. 192].)

■ There is no sound basis for concluding that subdivision 3 of section 1880, when considered in the light of its background and purpose, disqualifies a witness in Mrs. Kauffman's position. She was joined as a defendant on the theory that she and Mr. Kauffman were joint obligors, and her testimony tended to establish her own responsibility, as well as that of the estate. In these circumstances the possibility that plaintiff might seek satisfaction from the estate rather than from Mrs. Kauffman could not have furnished a motive for falsehood. She could have served her own interests best by denying the validity of the claim, and the fact that she nevertheless testified in support of plaintiff was a strong indication that she was telling the truth. ■ In keeping with the purpose of the statute the word "Parties" in subdivision 3 of section 1880 must be construed as referring to those persons who *assert claims* against an estate. (*Todd* v. *Martin*, 4 Cal. Unrep. 805, 810-811 [37 P. 872].) Mrs. Kauffman was not such a party, and the trial court properly refused to disqualify her as a witness.

The cases of *Moore* v. *Schofield*, 96 Cal. 486 [31 P. 532], and *Blood* v. *Fairbanks*, 50 Cal. 420, are overruled, and the case of *Roncelli* v. *Fugazi*, 44 Cal.App. 249 [186 P. 373], is disapproved insofar as it is inconsistent with the views expressed in this opinion.

Other claims of error made by the executors rest on the premise that Mrs. Kauffman's testimony was inadmissible, and they need not be discussed.

### Appeal of Mrs. Kauffman

■ The record also warrants the judgment against Mrs. Kauffman. Her admissions in the answer, as well as her testimony and that of Bernard Trabin, amply support the court's

determination that there was an oral agreement which was as binding upon her as upon Mr. Kauffman. Since the Kauffmans admittedly made a part payment, there is no merit in the claim that the statute of frauds prevents enforcement of the agreement. (See Civ. Code, §§ 1624a, 1724.) There is likewise no merit in the argument that the invoices were intended to constitute a written agreement superseding the oral one and that, since Mrs. Kauffman did not sign the invoices, she is not liable. The invoices were not prepared until after plaintiff had delivered the furnishings in reliance on the oral agreement, and the documents did not contain any provision indicating an intent by plaintiff to relinquish his rights against Mrs. Kauffman. It would be unreasonable in these circumstances to hold that the fact that Mrs. Kauffman did not sign the invoices had the effect of releasing her from her obligation under the oral agreement.

The judgment is affirmed.

Shenk, J., Traynor, J., Schauer, J., Spence, J., McComb, J., and Peters, J., concurred.