[L. A. No. 26893. In Bank. Nov. 9, 1962.]

KATHERINE MARGARET BRUCE et al., Plaintiffs and Appellants, v. ELENITA E. ULLERY, as Administratrix, etc., Defendant and Respondent.

Abe Mutchnik, James D. Garibaldi, Theodore A. Horn, Warren J. Lane and David S. Smith for Plaintiffs and Appellants.

Parker, Stanbury, Reese & McGee and George Babcock for Defendant and Respondent.

TOBRINER, J.—To hold that the so-called deadman's statute (Code Civ. Proc., § 1880, subd. 3) prevents a cross-defendant from testifying as to facts preceding the death of a cross-complainant in a case in which the estate presses the cross-complaint would be to permit the use of the statute as a weapon of aggression rather than protection and to give it application beyond that of the precedents. As we point out in more detail *infra,* we hold that in this action of plaintiffs for injuries incurred in an intersection automobile collision the trial court erred in applying the statute to foreclose cross-defendant from so defending against the estate's cross-complaint for injuries to decedent and for property damages. We find no merit, however, in two further alleged grounds for appeal: that the evidence did not sufficiently support the verdict and that the court erred in its instruction that plaintiff wife at the time of the accident operated the vehicle with her husband's permission.

Plaintiffs Bruce, husband and wife, originally brought this action against defendant Richard Ullery. Ullery filed an answer and a cross-complaint which sought recovery for per-

sonal injuries and property damages that he alleged he sustained in the accident. When Ullery died of causes not connected with the accident the court substituted his widow, the administratrix of his estate, as defendant and cross-complainant. The jury returned a verdict in favor of defendant cross-complainant in the sum of $3,244, which amount was reduced to $2,250 on motion for a new trial.

The facts disclose a typical intersection collision. Plaintiff Mrs. Bruce drove west on Rush Street toward the intersection; Ullery approached it from the north on Hoyt Street. The only eyewitness, Ebert, Mrs. Bruce's uncle, who was riding with her, testified that their station wagon was going 25 miles per hour; that the traffic light showed green but changed to amber about the time the vehicle entered the intersection. He testified that Ullery was coming at a speed of 40 to 55 miles per hour when the signal for westbound cars still displayed amber. Ebert could not say whether Mrs. Bruce looked to her right, but their station wagon proceeded straight ahead without any change in speed. Neither vehicle slowed down before the collision. The Ullery car hit the Bruce station wagon just ahead of the dashboard on the right side; the station wagon skidded, straightened out after the impact and went half a length ahead, stopping not more than 7 or 8 feet west of the west curb line of Hoyt Street. Ebert's cross-examination, however, revealed discrepancies with his deposition.

Ullery's son testified that he saw his father's car that evening; that the car had been damaged at the left front; that the whole left front had been moved to the right; that the left door had been broken, and the car had been bowed like a V-shape. Everything on the left side of the front half of the car had been ruined and pushed against the engine, but the right side of the engine had not been damaged. The frame had been bent to the right.

A highway patrol officer testified that he arrived at the scene 10 to 15 minutes after the collision. He stated that although the Ullery car left no brush marks after the impact, the Bruce station wagon left 63 feet of brush marks. In contrast to Ebert's testimony, the officer stated the Bruce vehicle finally came to a stop 42 feet west of the west edge of Hoyt Street. The officer further testified that in a conversation with Ullery at the scene of the accident, Ullery stated that as he was traveling 25 to 35 miles an hour on Hoyt Street he observed a westbound vehicle (the Bruce station wagon)

on Rush Street but that the traffic light for the north-south traffic on Hoyt Street showed green; the officer could not state whether Ullery said that when he saw the light turn green Ullery was 70 or 7 feet from the intersection. Plaintiffs interposed no objection to this hearsay testimony. (*Powers* v. *Board of Publc Works* (1932) 216 Cal. 546, 552 [15 P.2d 156]; *Crocker-Anglo Nat. Bank* v. *American Trust Co.* (1959) 170 Cal.App.2d 289, 299 [338 P.2d 617].)

Turning to the issue of the deadman's statute, we first describe the procedural background for the interposition of the objection based upon it. Because their medical witnesses were detained, plaintiffs could not conclude the presentation of their case. To proceed with the trial, the court, upon stipulation of counsel, permitted defendant's witnesses to testify in support of the answer and cross-complaint. Ullery's son, as we have noted *supra,* testified as to the damage to the Ullery car. Defendant administratrix then described decedent's damages: the medical expenses, the extent of personal injuries, the loss of earnings, the loss of the use of the car. After plaintiffs called a medical witness, defendant presented the testimony of the highway patrol officer.

Plaintiffs thereafter resumed the presentation of their case, their medical witness testified, and then plaintiff wife, Mrs. Bruce, took the witness stand in her own behalf. At that point defendant's counsel objected to "any testimony" from Mrs. Bruce "relating to any event prior to the death of Mr. Ullery under section 1880 of the Code of Civil Procedure," and the court sustained the objection.

As we shall point out, we believe that this court has long recognized that an estate waives the protection of the statute by filing an action for and on its own behalf to obtain relief upon facts occurring before the death of decedent. While some cases have placed procedural limitations upon the application of the waiver, we do not believe that the particular method or order of presentation of the evidence should overcome the principle. Nor can we accept the contention of the administratrix that she only partially waived the statute, limiting the waiver to the single issue of damages. The waiver covered the whole defense to the cross-complaint.

The early case of *Sedgwick* v. *Sedgwick* (1877) 52 Cal. 336, held that the exclusionary provision of the statute cannot operate to silence the testimonial defense of the party against whom the executor or the administrator of the estate levels his

action. To that extent the estate must necessarily waive the statute. In *Sedgwick* this court said at page 337: "This action is brought by the executrix, and is brought upon a demand, not against, but in favor of the estate, and therefore does not fall within the above cited provision. (Code Civ. Proc., § 1880, subd. 3.)"

*Webster* v. *Freeman* (1938) 27 Cal.App.2d 5 [80 P.2d 497], applied the waiver to the defense of a plaintiff to a counterclaim. There the claimant brought an action to recover for services rendered a decedent. The executor counterclaimed for credits and cash advancements in excess of the claimed services. Construing the counterclaim as an action by the executor against the claimant, the court held that the limitation of the section did not preclude plaintiff from testifying in defense of the counterclaim.

Two cases, *Norgard* v. *Estate of Norgard* (1942) 54 Cal. App.2d 82 [128 P.2d 566] and *George* v. *McManus* (1915) 27 Cal.App. 414 [150 P. 73], place procedural conditions upon the waiver of the statute. *Norgard* holds it inapplicable to a situation in which the counterpleading is dismissed before evidence is introduced in its support. In that case the administrator sued the estate; the estate filed a cross-complaint. Prior to the trial the estate dismissed the cross-complaint. On the basis of the statute the court excluded the plaintiff's testimony and rendered judgment in favor of the estate. Plaintiff appealed on the ground that he was a competent witness to testify on his own behalf since the estate had originally filed the cross-complaint. Rejecting plaintiff's contention, the court held that the "cross-complaint having been abandoned by respondent estate, and no evidence having been introduced by respondent in support thereof," the limitation of the section properly applied in bar of plaintiff's testimony. (54 Cal.App.2d 88.) The concurring opinion implies that in the absence of the dismissal of the cross-complaint, plaintiff would have been entitled to testify: "It is not error to dismiss a cross-complaint, to which dismissal a pleader would otherwise be entitled, merely because the cross-defendant may thereby lose his right to testify against a dead man, contrary to the provisions of section 1880." (54 Cal.App.2d 91.)

The *Norgard* court relies upon *George* v. *McManus* (1915) 27 Cal.App. 414, *supra*. In *McManus* plaintiff sued for damages sustained in an automobile collision; the personal representatives of the deceased defendant filed a counterclaim. At the trial, over objection based on the statute, the court per-

mitted plaintiff to testify in support of his complaint on matters occurring before the death of the decedent. On appeal the court held the testimony inadmissible because the estate had not yet produced witnesses in support of the counterclaim. After declaring that the mere fact of the filing of the counterclaim did not render plaintiff's testimony competent, the court concluded (27 Cal.App. 418) : ''It is apparent . . . upon an examination of the record presented, that the evidence of plaintiff was offered, received, and considered by the court in support of the allegations of his complaint. *Since defendants had offered no evidence in support of their counterclaim* when plaintiff was called to testify, it is clear therefore that such evidence was not offered *in rebuttal* of any testimony given by defendants' witnesses.'' (Emphasis added.)

█ We do not believe the right to defend against the cross-complaint of the estate founded upon facts occurring before decedent's death should turn on the fortuity of whether the estate has as yet produced evidence in support of the counterpleading. Once the counterpleading has been filed, the estate has opened up the issue to the defense of the cross-defendant and foregoes the protection of the statute.

In any event, the estate in the instant case did introduce testimony in support of the cross-complaint before the court rejected the proffered testimony. Ullery's son, earlier in the trial than plaintiff wife, testified as to the condition of decedent's car in order to establish plaintiffs' liability. Having fully presented this evidence of Ullery, which, of course, supports the cross-complaint, defendant administratrix would seize the statute as a sword instead of a shield if she were now to wield it to cut off rebuttal testimony. Even on the *McManus* premise, the court here should have admitted Mrs. Bruce's testimony.

█ Finally, we cannot accept the suggestion of defendant administratrix that since she herself only testified on the issue of damages, plaintiffs' proffered testimony should be limited to that issue. The administratrix contends that she waived the protection of the statute only partially; that she did not lose the benefit of the disqualification of the witness on all subjects but only as to matters ''concerning which the protected party has testified.'' (97 C.J.S. § 242, p. 723.)

We believe the waiver should embrace the entire defense to the cross-complaint. The court could apply the waiver in three ways: (1) only to evidence in rebuttal to the subject

matter of the testimony of the administratrix, (2) only to evidence in rebuttal to the testimony of the administratrix herself and not to that of any witness on her behalf, (3) generally and to all relevant, competent and material testimony in defense of the cross-complaint. The first two applications arbitrarily constrict the defense of the party who must meet the cross-complaint; indeed, the second ground enables the administratrix, by eschewing the witness stand, to prove her case by other witnesses without encountering rebuttal. Only the third application affords the opportunity for a full defense to the cross-complaint.

Such opportunity does no more than fulfill the purpose of the statute whose "object . . . is to so balance rights as between the survivor and the deceased that no advantage may be taken of a deceased person because of the fact that his lips are sealed by death, and that the personal representative may not take advantage of the survivor." (*Moul* v. *McVey* (1942) 49 Cal.App.2d 101, 105-106 [121 P.2d 83].)

It would be a strange reversal of judicial history if we were now to ignore the trend of the cases and hold that the waiver of the statute did not cover the defense which the estate itself has provoked. The story of the deadman's statute has, indeed, been a record of court contraction of its scope and expansion of such conduct as might constitute its waiver. The very recognition that it is subject to waiver narrows it, because, literally, the statute renders the witness *incompetent* to testify, as an infant or insane person; and such incompetency would not theoretically be amenable to waiver. Yet numerous cases have held that the executor or administrator may waive the benefit of the provisions (see *Kinley* v. *Largent* (1921) 187 Cal. 71 [200 P. 937]; *Deacon* v. *Bryans* (1931) 212 Cal. 87 [298 P. 30]; *Moul* v. *McVey, supra,* 49 Cal.App. 2d 101; *Thompson* v. *Hickman* (1948) 89 Cal.App.2d 356, 364, 369 [200 P.2d 893]). Such waiver may be manifested by the taking of plaintiff's deposition (*McClenahan* v. *Keyes* (1922) 188 Cal. 574 [206 P. 454]); by the defendant executrix proceeding, on the cross-examination of plaintiff, beyond the direct examination and asking questions as to facts occurring during the life of the decedent (*Lucy* v. *Lucy* (1937) 22 Cal.App.2d 629 [71 P.2d 949]); by waiver of the privilege at a previous trial (*Deacon* v. *Bryans, supra*).

The curtailment of the coverage of the statute finds expression in the ruling that the reference in the statute to actions on a "claim, or demand" applies to money claims and not to

an action to redeem mortgaged property (*Wadleigh* v. *Phelps* (1906) 149 Cal. 627 [87 P. 93]) or to comparable actions (Witkin, Cal. Evidence, 442). The statute does not apply to an action against a partnership in a case in which the member who had handled the transaction had died (*Panno* v. *Russo* (1947) 82 Cal.App.2d 408 [186 P.2d 452]). ▇ In sum, as we have recently stated in *Trabin* v. *Title Ins. & Trust Co.* (1959) 52 Cal.2d 149, 152 [339 P.2d 136] : "This court has been reluctant to extend the effect of subdivision 3 of section 1880 beyond what is compelled by its language and in many cases has narrowly construed the statute against the disqualification of a witness and in favor of the admissibility of evidence.''

Concurring in Witkin's comment that "The dead man statute has been strongly criticized by nearly all authorities in the field of evidence, and the movement for its statutory repudiation is steadily gaining ground,'' we see no reason to give it a new and strained application. (Witkin, Cal. Evidence, § 394, p. 444; see Chadbourn, *History and Interpretation of the California Dead Man Statute: A Proposal for Liberalization,* 4 U.C.L.A. L. Rev. 175, 202.) ▇ We conclude that in the instance of a cross-complaint of an estate founded upon facts preceding decedent's death, the waiver of the disqualification attaches to the testimony of all witnesses defending against the cross-complaint. (97 C.J.S. § 241, p. 721.) [1]

Our study of plaintiffs' second ground of appeal discloses no basis for holding that the evidence does not sufficiently support the judgment. The point rests upon the proposition that the testimony of the sole eyewitness, Ebert, placed the fault upon Ullery. Plaintiffs argue that while the jury could have disregarded all of Ebert's testimony, it could not reject some parts of it and accept other parts for the purpose of finding plaintiff driver negligent.

▇ Plaintiffs' position, however, does not accord with the settled rule that the determination of the credibility of a wit-

---

[1]Defendant further contends that the court's refusal to allow plaintiff wife to testify did not prejudice plaintiffs; that plaintiffs did not make any offer of proof to indicate the nature of the proposed testimony. The cases hold, however, that when "the trial court states that it will not receive evidence, a specific offer of proof is not necessary and would be idle under the circumstances, and it therefore may be claimed that it was error to exclude such evidence.'' (*Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754, 760 [146 P.2d 905]; see also *Caminetti* v. *Pacific Mut. L. Ins. Co.* (1943) 23 Cal.2d 94, 100 [142 P.2d 741]; *Van Horn* v. *Southern Pac. Co.* (1956) 141 Cal.App.2d 528, 536-537 [297 P2d 479].)

ness and the weight to be given his testimony lie exclusively within the province of the jury. ''[T]he jury properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material. [Citing cases.]'' (*Nevarov* v. *Caldwell* (1958) 161 Cal.App.2d 762, 777 [327 P.2d 111].) Furthermore, negligence may be proved circumstantially like any other issue of fact, and indirect evidence may outweigh direct evidence on the contested point. (*Scott* v. *Burke* (1952) 39 Cal.2d 388, 398 [247 P.2d 313].) As we said in *Gray* v. *Southern Pac. Co.* (1944) 23 Cal.2d 632 [145 P.2d 561], at page 641: The jury ''could reject positive testimony and accept circumstantial evidence as proof of the facts, as it is elementary that direct evidence may be disbelieved and contrary circumstantial evidence relied upon to support a verdict or finding.'' (See also *McNulty* v. *Copp* (1949) 91 Cal.App.2d 484, 490 [205 P.2d 438].)

 Here the jury could properly have inferred that since plaintiffs' station wagon struck the Ullery car with such force on the left side that it pushed that side into the engine and bent the frame to the right, plaintiff wife drove into the intersection without looking to the right and at a high rate of speed. The 63 feet of brush marks which the plaintiffs' station wagon left after the collision signify high speed. Since the officer testified that Ullery said that when he drove into the intersection the traffic light was green, the jury could have concluded that when plaintiff wife entered the crossing the light was red. Such inferences sufficiently support the verdict.

 Plaintiffs' third point, that the court erred in its instruction that plaintiff wife operated the station wagon with her husband's consent,[2] cannot stand. Plaintiffs argue that the trial court ''erroneously assumed, from the mere fact that *co-ownership* of the vehicle was admitted . . . that this . . . could therefore be entirely removed from the consideration of the jury.'' Yet, say plaintiffs, the issue was a factual one. The record lends no support to plaintiffs' argument.

_____

[2] The instruction read: ''It has been established in this case that at the time of the accident in question, the vehicle then being used by Mrs. Bruce was owned by both Mr. and Mrs. Bruce and that it was being used with the permission of Mr. Bruce. It follows, therefore, under the law, that if one is liable, both are liable.''

 In the absence of other evidence upon the issue, but upon proof of coownership and use of a vehicle by one coowner, an inference normally arises that the coowner consented to such use. (*Krum* v. *Malloy* (1943) 22 Cal.2d 132, 135 [137 P.2d 18].) Here both the complaint and the cross-complaint alleged that plaintiffs owned the Pontiac station wagon. Moreover, plaintiffs drew no issue as to the matter of Mr. Bruce's consent and Mrs. Bruce's use of the car; the specification of issues in the pretrial order and joint pretrial statement did not mention the subject of consent (*Campbell* v. *Magana* (1960) 184 Cal.App.2d 751, 757 [8 Cal. Rptr. 32]; *Dell'Orto* v. *Dell'Orto* (1959) 166 Cal.App.2d 825, 831 [334 P.2d 97]); plaintiffs offered no evidence on the issue of permissive use; the court read the instruction in question to counsel in chambers and plaintiffs tendered no objection.

While we thus concur with the trial court's disposition of the last two issues we cannot agree with that of the first since it neither followed the precedents nor the policy of contraction, rather than expansion, of the deadman's statute.

The judgment that Katherine Margaret Bruce and Merle V. Bruce take nothing by reason of their complaint is affirmed; the judgment that Elenita E. Ullery, as administratrix of the Estate of Richard Eugene Ullery, have and recover from said Katherine Margaret Bruce and Merle V. Bruce on the cross-complaint damages in the sum of $2,250 is reversed, and the cause is remanded for retrial on the cross-complaint in accordance with this opinion. Each party shall bear his costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J.,* concurred.

Appellants' petition for a rehearing was denied December 5, 1962. White, J.,* participated therein.

---

*Assigned by Chairman of Judicial Council.