**Clarence T. SAUPE, Appellant,**

v.

**Raymond C. KERTZ, Administrator of the Estate of Louis Paul Kertz, Deceased, Respondent.**

**No. 58706.**

Supreme Court of Missouri,
En Banc.

May 12, 1975.

Rehearing Denied June 9, 1975.

David G. Beeson, Albert C. Lowes, Buerkle, Buerkle & Lowes, Jackson, for appellant.

Roberts & Roberts, by Raymond R. Roberts, Farmington, for respondent.

HENLEY, Judge.

This is an action for damages for personal injuries suffered in a collision of two motor vehicles. Verdict and judgment were for defendant and plaintiff appealed to the Court of Appeals, St. Louis district. That court affirmed. On application of appellant we ordered the case transferred to this court. Mo.Const. Art. V, § 10, V. A.M.S.; Rule 83.03, V.A.M.R.[1] We reverse and remand, because the trial court gave a contributory negligence instruction not supported by evidence.

During the early morning hours of August 21, 1968, Clarence T. Saupe, aged 63, left his home in Jackson, Missouri, driving a two-ton truck north on U.S. Highway 61 enroute to St. Louis on a regular business trip. At 5:25 that morning Louis Paul Kertz, aged 18 (son of defendant, Raymond C. Kertz, administrator), left his parents' home near Ste. Genevieve driving his automobile south on U.S. Highway 61 enroute to Baldwin, Illinois, his place of employment. Shortly before 6:00 a.m. that day, the motor vehicles operated by these persons were involved in a head-on collision on this highway in Ste. Genevieve, resulting in the death of Louis Kertz and personal injuries to Clarence Saupe (plaintiff).

Plaintiff pleaded and submitted on negligence of defendant's decedent in either (1) failing to keep a careful lookout, or (2) driving on the wrong side of the road. Defendant's defense of contributory negligence was submitted in an instruction which authorized a verdict for defendant whether or not his decedent was negligent if the jury believed plaintiff either (1)

---

1. References to rules are to Missouri Supreme Court Rules.

drove on the wrong side of the road, or (2) "knew or by [the use of] the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have [a] swerved, or [b] sounded a warning, or [c] slackened his speed and swerved but that plaintiff failed to do so * * *."

■ Louis Kertz having been killed in the accident, plaintiff Saupe, on objection of defendant based on § 491.010,[2] was not permitted to testify in his own behalf as to how the collision occurred.

The only evidence presented having any bearing on the negligence issues is (1) the testimony of Corporal Robert A. North, a member of the state highway patrol, describing what he found and observed upon his arrival at the scene within a few minutes after the collision; (2) a plat of the scene showing, according to measurements made by Corporal North, where he found the two vehicles, the location and length of their skid marks, the location of gouge marks in the highway surface near where he found the vehicles, and a very general description of the terrain; (3) photographs of the damaged vehicles, of the highway at the scene, and of the highway and general area made from unidentified points and unspecified distances from the scene north and south of the vehicles; and (4) the testimony of Theodore and Roy Busch, brothers, who were traveling north on this highway somewhere south of plaintiff's truck at the time of the collision. The damage done to the right front portion of the Saupe truck and the left front portion of the Kertz automobile, as shown by photographs, indicate a violent collision causing the automobile to be driven back several feet from what appears to have been accepted as the point of impact in the west lane.

At and near the point of collision U.S. 61 is a two-lane concrete highway twenty feet wide with a nine-inch lip at each edge and an eight-foot wide macadam shoulder on each side; it runs generally north-south. The posted speed limit in the vicinity is 45 miles per hour. The area is hilly.

Corporal North testified that he investigated this accident and found plaintiff's truck and the Kertz automobile at rest on the west side of the highway, both headed in the same direction (west of northwest) approximately 3'9" apart; that the front half of the automobile was on the west shoulder and the back half in the west lane of the highway (lane for southbound traffic); that the left front corner of the truck was on the west edge of the west shoulder and the balance of it extended back east across the highway to a point where its right rear corner was approximately 4'9" west of the edge of the east lane (lane for northbound traffic); that he found skid marks on the highway leading up to each vehicle and debris in the west lane; that the skid marks leading to the truck began in the east lane and ran generally northwest into the west lane, the marks from the right rear dual wheels being 34' long and those from the left rear wheels 40' long; that the skid marks leading to the automobile also began in the east lane and ran generally southwest into the west lane, the marks from its wheels being 39' long; that the skid mark made by the left wheel of the automobile began at a point 5'8" west of the edge of the east lane; that the surface gouge marks and debris found in and near the edge of the west lane indicate, according to measurements from where the skid marks stopped, the approximate point of impact of the two vehicles; that the approximate distance between the beginning points of the two sets of skid marks is "roughly 95 feet"; that the east shoulder of the highway at this point "* * * is certainly [of] adequate width to hold a motor vehicle"; that at the scene of the collision the highway runs upgrade from north to south. We note that the evidence does not show the degree of this

---

2. References to sections of the statutes are to RSMo 1969 and V.A.M.S.

change in grade or the approximate distance from the vehicles, or any other reference point, south to where the highway crosses the crest of this hill or the percentage of the grade downhill south of the crest. Hence, we do not know whether either driver could have seen the other before plaintiff's truck reached the crest of the hill.

Theodore Busch testified that early in the morning of August 21, 1968, below Ste. Genevieve and shortly before this accident, he and his brother, Roy, were in their truck traveling north on U. S. Highway 61 enroute to St. Louis with a load of fireplace wood; that he was driving about 50–55 miles per hour when plaintiff's truck passed him "back in the flat * * * runnin' around tween 65 and 70"; that plaintiff's truck continued at that speed up the hill toward the scene of the collision; that after the truck went over the crest of the hill it was out of his sight for a few seconds; that "when I come up over the hump I seen the back end of the truck raise up and it went across [to] the left side of the road"; that he (Busch) did not see the Kertz automobile.

Roy Busch testified that he was asleep and was awakened by plaintiff passing their truck; that he was still drowsy when he and his brother reached the crest of the hill and did not see the collision. His testimony is essentially the same as that of his brother regarding the location where plaintiff's truck passed theirs, the relative speeds of the two trucks, their direction of travel, the terrain, and what they saw after they stopped at the scene of the collision.

Plaintiff's first point is that the court erred in not directing a verdict in his favor on the issue of liability in accordance with his motion filed at the close of all the evidence.

To direct a verdict in an automobile accident case in favor of a party having the burden of proof is rare. In Zaggari v. Nichols, 429 S.W.2d 758, 760[1, 2] (Mo.1968), the court said: "Only in exceptional circumstances, as in the case where the defendant in his pleadings or by his counsel in open court admits or by his own evidence establishes plaintiff's claim, or 'where there is no real dispute of the basic facts supported by uncontradicted testimony essential to a claim * * *,' [Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282, 287 (1954)] have the courts indicated that there may be an exception to this general rule."

Plaintiff concedes in argument that there is not sufficient evidence to support his charge that defendant's decedent negligently failed to keep a careful lookout, and that he is not entitled to a directed verdict on that basis. However, he insists that since there is undisputed evidence that prior to the collision defendant's decedent was driving south in the lane for northbound traffic, on the wrong side of the road, the deceased was guilty of negligence per se which entitled plaintiff to a directed verdict on liability, leaving the amount of damages as the only issue for the jury.

Plaintiff recognizes the fact that at the time of the collision his truck was in the lane for southbound traffic, on the wrong side of the road, but he argues that this does not show negligence per se on his part, because, he says, the undisputed evidence, the physical facts, show that he was in the west lane as a result of his turning or swerving his truck to the left and applying his brakes, in the exercise of due care, to avoid a collision in the east lane with the southbound automobile being driven by defendant's decedent. There is at least one significant fallacy in this argument: the physical facts to which plaintiff refers do not show conclusively that, at the time he moved his truck toward the west lane, the southbound automobile was or was not still in the wrong lane. Nor, for that matter, is there any evidence showing where on the highway either of the two vehicles were, the distance that separated them, or their respective speeds, when the driver of one first saw, or could have seen, the other.

■ Different minds reasonably could draw different conclusions from the undisputed but meager facts of this case; hence, the question of defendant's negligence was for the jury instead of the court. The court did not err in refusing to direct a verdict for plaintiff. Richardson v. Wendel, 401 S.W.2d 455, 459[6] (Mo. 1966); Rickman v. Sauerwein, 470 S.W.2d 487, 489[2] (Mo.1971).

Plaintiff also contends the court erred in giving instruction No. 4[3] on contributory negligence, because the alternative submissions are not supported by substantial evidence.

■ Each element of a disjunctive contributory negligence instruction must be supported by substantial evidence, and the lack of such support on any one renders the submission erroneous. Shaffer v. Kansas City Transit, Inc., 463 S.W.2d 606, 609 [1] (Mo.App.1971); Cook v. Cox, 478 S. W.2d 678, 680[2] (Mo.1972). On the submission of negligent failure to avoid the collision by swerving, sounding a warning, or slackening speed and swerving, the evidence must show plaintiff had the means and ability to have avoided the collision by doing each act described. In Cook v. Cox, supra, at 680, the court said: "Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signalling equipment with which to warn, or braking appliances with which to slow down * * *, but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged to take effective action in avoidance."

■ There is no evidence whatever which would support a finding that plaintiff could have avoided the collision by sounding a warning, or that he failed to sound a warning, or, for that matter, that he had "the signalling equipment with which to warn." Since there is no substantial evidence to support this submission, there is no need to consider the other alternatives. For error in giving the contributory negligence instruction, the case must be remanded for a new trial.

Plaintiff next contends that the court erred in refusing to permit him to testify as to the facts relating to the collision, because (1) defendant did not make a proper objection to his testimony; and (2) defendant waived the protection of the Dead Man's Statute (a) by filing a motion requiring plaintiff to produce all his medical records for inspection and copying, as well as payroll records showing wages lost as a result of the injuries allegedly suffered in this collision; and (b) by filing a counterclaim for damages for wrongful death of defendant's decedent.

The record shows that during direct examination, after plaintiff had stated his name, defendant made the following objection: "Your Honor, at this time the law under the Dead Man's Statute provides that where one party to a transaction has been killed that the other party to that transaction is disqualified from testifying to those events and we would object for that reason to any further testimony."

■ Plaintiff contends that the objection made is not proper, because it stated that § 491.010 "disqualified" the witness from testifying, whereas the statute is a

---

3. Instruction No. 4 is as follows:

"Your verdict must be for the Defendant whether or not Defendant's decedent was negligent if you believe:

First, Plaintiff either:

drove on the wrong side of the road; or

Plaintiff knew or by the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have swerved, or sounded a warning or slackened his speed and swerved but that Plaintiff failed to do so; and

Second, plaintiff's conduct, in any one or more of the respects submitted in paragraph First, was negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

"qualifying" one and the objection should have been that the witness was not competent to testify. This attack upon the objection is tenuous at best. The objection includes the substance of the applicable portion of the statute, is sufficiently clear and definite for the court to understand the reasons therefor, and is adequate. Rubinstein v. New York Life Ins. Co., 153 S.W. 2d 760, 763 [4] (Mo.App.1941).

In support of his contention that defendant waived the protection of the Dead Man's Statute by filing a motion to produce records, plaintiff relies on cases [4] holding that the protected party waives the incompetency of the survivor by the taking of his deposition or the service of interrogatories upon him. Plaintiff argues that the waiver rule stated in those cases must be applied to a motion compelling the production of his medical and employment records, because there is no basic difference between these methods of discovery.

Defendant contends that it does not follow that because there may be no basic difference between these methods of discovery, the waiver rule is applicable in this case; that depositions—interrogatories and the motion to produce records in this case are distinguishable in that the first seeks testimony and the second records; that the record evidence sought is evidence about which the deceased *could not* possibly have testified had he lived; that the survivor is incompetent to testify only as to matters about which the deceased *could* have testified had he lived, and that this principle is applicable to the survivor's medical and employment records as evidence.

Since the fact appears to be that defendant's decedent had no knowledge of the records sought and, therefore, could not have testified about them had he lived, these records were not matters about which plaintiff was incompetent to testify. Hence, the motion to produce did not constitute a waiver of plaintiff's incompetency to testify as to how the accident occurred.

The counterclaim of the administrator was dismissed by the court for the reason that an administrator may not maintain an action for the wrongful death of his decedent, where, as here, the deceased is a childless unmarried minor who left parents surviving him. Section 537.-080. In support of his contention that defendant waived the protection of the Dead Man's Statute by filing this counterclaim, plaintiff cites Bruce v. Ullery, 58 Cal.2d 702, 25 Cal.Rptr. 841, 375 P.2d 833 (1962) and 58 Am.Jur. § 360. Bruce v. Ullery, supra, is an action for damages for personal injuries (arising out of an automobile accident) in which a counterclaim was filed by a defendant who subsequently died of causes not connected with the accident. The deceased defendant was succeeded by his administratrix who prosecuted the counterclaim and introduced evidence in support thereof. Judgment was for the administratrix on plaintiff's claim and the counterclaim. On appeal, the California Supreme Court held that the filing of the counterclaim waived the protection of the "deadman's statute," but distinguished that case from the prior case of Norgard v. Norgard's Estate, 54 Cal.App. 82, 128 P.2d 566 (1942) which held that there was no waiver where the counterclaim was dismissed before the introduction of evidence.

In the instant case not only was the counterclaim dismissed before trial but the claim it asserted was one over which the court did not have jurisdiction, because, under the existing facts, the administrator was not authorized to recover for the wrongful death of his decedent. Section 537.080. In these circumstances, there was no waiver of the protection of the Dead Man's Statute.

Plaintiff's final points are that the court erred in permitting defense counsel (1) to

---

4. In re Trautmann's Estate, 300 Mo. 314, 254 S.W. 286 (1923); Lehr v. Moll, 247 S.W.2d 686, 690[6] (Mo.1952). See also: Ess v. Griffith, 139 Mo. 322, 40 S.W. 930, 931[1] (1897); Baker, et al. v. Baker, 363 Mo. 318, 251 S.W.2d 31, 33[3] (1952).

attempt to commit members of the jury panel to certain facts by his inquiries during voir dire examination; and (2) to seek, during closing argument, the sympathy of the jury and argue facts allegedly outside the record and having no bearing on the issues. The matters about which plaintiff complains in these points will not likely arise again in the same context in any lawsuit. Hence, what we might say in stating, discussing and ruling upon each voir dire question and each point of the argument about which plaintiff complains would be of no particular benefit to the parties in another trial and of no precedential value to the bench and bar. It is sufficient to say that we have examined carefully the record of these matters and determine that the trial court did not abuse its discretion in the respects claimed by plaintiff.

The judgment is reversed and the case remanded.

All concur.