Ralph **HOUK**, Appellant,

v.

B. F. **PENNINGTON**, Respondent.

No. 28357.

Missouri Court of Appeals, Kansas City District.

April 4, 1977.

Rehearing Denied May 3, 1977.

M. Sperry Hickman, M. Sperry Hickman, Inc., Independence, for appellant.

Max W. Foust, Bart L. Strother, Morris, Foust, Beckett & Ponick, Kansas City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from verdict and judgment for defendant in action for personal injuries from a gunshot wound sustained by plaintiff March 15, 1970, in a hunting accident in Henry County. The question is whether the instruction which submitted plaintiff's contributory negligence was supported in the evidence. Affirmed.

Plaintiff's version of the facts follows:

Plaintiff and a friend, Earl Parks, were hunting. Plaintiff had shot a deer the day before and the plan was that plaintiff would quail hunt while Earl Parks took a deer stand below him hoping plaintiff would flush a deer. They were in a milo field west of the Milo Parks or Estella Parks (no relation to Earl) property. Defendant and other friends were hunting on the Parks land.

Earl Parks "clumb up in a sycamore tree about 30 feet" on the south side of the milo field and plaintiff "merged out in the open field" from the north walking south. Plaintiff was wearing an orange fluorescent cap and vest with a red sweatshirt and was walking 20 or 25 feet west of the boundary line between the field and the Parks property. Five or ten minutes before plaintiff emerged from the brush, Earl Parks heard three shotgun shots in the area where plaintiff came out of the brush. Plaintiff was carrying a Model 12-gauge Winchester shotgun.

Parks saw defendant out in the field and heard a heavy shot fired; he swung his glasses back to plaintiff and saw him go down out of sight in the grass and then heard three more shots. Plaintiff was then 30 to 40 yards south into the open field.

The first shot was a high-caliber rifle fired by "somebody right close up on top" of plaintiff, within 40 to 50 yards of him. Parks thought plaintiff was going down as an experienced hunter will when a shot is fired close. Plaintiff was only on the ground a few seconds while the other three rifles shots were fired, then he raised up and fired three shotgun shots. The four rifle shots were "pretty well" in succession. When Parks heard plaintiff fire three shotgun shots, he thought it was to let the rifleman know where he was. Plaintiff had raised up and fired three shots with his shotgun after Parks heard the first rifle shot followed in a matter of seconds by three additional rifle shots.

Parks swung his glasses away to look for a deer and when he looked back plaintiff got up and walked across the fence into the brush. Parks did not see plaintiff again until he learned later that evening that he was in the hospital. Parks did not realize at the time he saw these events that plaintiff had been shot.

Before he was injured, plaintiff had flushed a covey of quail at the edge of the timber and shot twice. He was 20 to 30 feet west of the Parks line fence. He reloaded and took a few steps to the south and was out in the open when he heard a big crack of a gun and thought his own gun had gone off, it seemed so close. From the time he shot at the quail until he was shot was three to five minutes. There were three more shots as he went down, he yelled and fired three shots in the air as a signal, yelled again and somebody answered from close across the fence.

He walked east to the fence and walked to the east about 50 feet from the fence when he saw the defendant coming from the east and south. Defendant was carrying a 7.65 millimeter Mauser rifle which he said he did not know much about and had difficulty reloading after he shot one warning shot.

Before he shot at the quail, plaintiff heard deer rifle shots around him, some close and some far away, "sounding like the Civil War." The shooting was within 100 to 500 yards but he did not think there was any to the south of him. The shot which struck him came from the east and south of him just across the fence on the Parks land.

Defendant Pennington admitted that he was the only one who shot close to plaintiff, that he did not see him before he was shot and he called that he had been hit after defendant fired the second shot.

Defendant's version of the facts adds the following:

Testimony of Clive Wright, Donald Voss, Charles Becker, and Harold Corwin described the topography, established the existence of posted no-hunting signs, and detailed the arrangements for the hunters in defendant's party to take assigned stands on the Parks land.

Defendant had visited the Parks farm the week before the accident with other hunters in the group for the purposes of planning the deer hunt, assigning locations to the hunters, walking the property and finding these locations, and knowing where everyone else was to be.

On the day in question defendant had taken his assigned hunting stand on the Parks property. He was aware of the location of each of the other hunters. He believed that there was an occupied assigned position to his north.

Defendant was located to the south of a gully. Beyond the gully there was a clearing, and beyond the clearing there was timber. There was foliage on the trees and there was chest-high ground cover. There was heavy dense cover between defendant's location and the spot where he later found plaintiff.

Defendant had heard heavy shooting all around that morning. He had heard shots from the north approximately a thousand yards away. He had heard shotgun blasts from a generally northerly direction approximately one thousand feet distant. Defendant did not believe anyone was close enough to his location to be in any danger because of the dense timber.

Quite awhile after hearing the shotgun blasts, defendant was looking north when two deer appeared on the north side of the gully in the opening. Defendant fired, one deer went down, got up, and he shot again. After the second shot, he heard "hollers" for help and ran straight north through the timber towards the sounds. Defendant was looking for whoever was "hollering" as he walked and ran north, but could not see anyone because there was too much brush. Defendant was unable to see plaintiff for the first time until he was approximately 30 to 40 feet from him. Plaintiff's location was approximately 500 feet from the spot where defendant had been hunting and approximately 300 feet inside or east of the west boundary of the Parks farm. Plaintiff was wearing green coveralls that blended with the foliage and was wearing nothing red or fluorescent.

Defendant knew there was not supposed to be anyone that close to his location or in the location where plaintiff was found. The plaintiff was familiar with the Parks property and its boundaries. The Parks

property was posted, and plaintiff knew it was posted. Plaintiff had heard shooting prior to the accident, describing it like a Civil War was going on, some of the shooting coming from the Parks property. Plaintiff knew these were deer rifles. From the time plaintiff left the timber where he had shot at quail, he did no more shooting, did not yell or give any other warning to any hunters that were on the Parks property.

Plaintiff's verdict-directing instruction was Instruction No. 3:

"Your verdict must be for plaintiff if you believe:

"First, that defendant knew or by using ordinary care could have known that plaintiff was in the range of defendant's firearm and that the discharge from his firearm was capable of reaching and injuring plaintiff, and

"Second, plaintiff did not know and by using ordinary care could not have known of this condition, and

"Third, that defendant discharged the firearm in the direction of plaintiff and shot plaintiff, and

"Fourth, such discharging of said firearm and shooting of plaintiff was negligent, and

"Fifth, as a direct result of such negligence the plaintiff was injured, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5."

Instruction No. 5 submitted plaintiff's contributory negligence:

"Your verdict must be for defendant whether or not defendant was negligent if you believe:

"First, plaintiff was on Estella Parks property without permission, and

"Second, plaintiff failed to warn defendant of his presence on Estella Parks property, and

"Third, defendant had no reasonable means with which to learn of plaintiff's presence on Estella Parks property, and

"Fourth, such conduct of plaintiff was negligent, and

"Fifth, such negligence directly caused or directly contributed to cause any damage plaintiff may have sustained."

Appellant charges the court erred in giving Instruction No. 5. He asserts that it submitted three elements, i. e., (1) that plaintiff was on the Parks land without permission; (2) that he failed to warn defendant of his presence, and (3) that defendant had no reasonable means to learn of plaintiff's presence, which were not supported by substantial evidence from which the jury might reasonably find them to be true, and that defendant admitted that he had warning of plaintiff's presence and means to learn of plaintiff's presence. He concludes, "Therefore these elements are not the proximate cause of plaintiff's injury." See *Bridgeforth v. Proffitt,* 490 S.W.2d 416 (Mo.App.1973); *Taylor v. Vestal,* 304 S.W.2d 820 (Mo.1957); *Saupe v. Kertz,* 523 S.W.2d 826 (Mo. banc 1975).

Appellant concedes evidence sufficient to support element (1) when he recognizes in his brief that "defendant's evidence on the first finding * * * was that he heard someone shout that he was hit and the shout was to defendant's north. * * * it can be inferred from his testimony that plaintiff was on Estella Parks' property. For the purpose of this appeal, * * * this issue is not of consequence."

There is no question that plaintiff failed to warn defendant of his presence on the Parks property, element (2). It was his theory that he was injured while on property to the west of the Parks land and was never on the Parks land until he made his way there after he was injured.

The jury reasonably could find that defendant had no reasonable means with which to learn of plaintiff's presence on the Parks land, element (3), from the following evidence: Defendant was located where timber, foliage, and brush obscured his vision to the north. It was sufficiently dense to conceal plaintiff until defendant was within 30 to 40 feet of him when defendant was searching for him after the cry for help. Defendant was aware of hunting in the area, but had heard no shots from any

direction closer than 1,000 feet, and a shotgun blast at 1,000 feet from a northerly direction preceded the accident. Plaintiff was dressed in drab clothing which did not stand out in the foliage. Defendant knew the assigned location of his hunting partners and knew no one was to be in the area into which he shot or as close to him as the place where he found the injured plaintiff.

It is not contended that the elements submitted by Instruction No. 5 did not constitute negligence; neither is it contended that the shooting was intentional. Because proximate cause is ordinarily a jury question, *Pollard v. General Elevator Engineering Co.*, 416 S.W.2d 90, 95[2], (Mo. 1967), it was properly left to the jury to say whether defendant reasonably could believe no one was close enough to him to be in danger, and that plaintiff's failure to warn of his presence where he was not supposed to be cause or contributed to cause his injury.

Judgment affirmed.

All concur.